STATE of Minnesota, Respondent,

v.

David James ARNDT, Appellant.

No. 48829.

Supreme Court of Minnesota.

Oct. 26, 1979.

C. Paul Jones, Public Defender, and Robert Oliphant, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., Norman B. Coleman, Jr., Spec. Asst. Atty. Gen., St. Paul, Fred W. Wellmann, County Atty., Austin, for respondent.

YETKA, Justice.

Defendant was found guilty by a district court jury of charges of felonious delivery of a controlled substance and introducing contraband into a jail and was sentenced by the trial court on the felonious delivery conviction only to a maximum prison term of 5 years. On this appeal from judgment of conviction, defendant (1) challenges the legal sufficiency of the evidence of his guilt and (2) contends that the trial court erred in admitting (a) testimony by a sheriff's detective concerning extrajudicial statements of one of the defendant's jail cellmates about defendant's plan to have drugs smuggled into jail, and (b) opinion testimony of the detective that he observed scar tissue and puncture wounds on defendant's arms consistent with defendant's having injected drugs into his arms. We conclude

that the evidence was sufficient and that the trial court did not err in either of these evidentiary rulings, and accordingly we affirm.

Defendant's key accuser at trial was 19-year-old Randy Fett, who as a participant in the Huber work-release program while he was serving a term in the Mower County Jail for theft, shared a large cell with other program participants, including defendant. Fett testified that after defendant gave him a pill on July 4, 1977, he contacted Detective James Bartlett and offered to help him if Bartlett would help him get his sentence shortened. Fett testified that, using money supplied him by Bartlett, he purchased some pills from defendant on July 6, 1977, and some more pills on the 11th, all of which he turned over to Bartlett.

On the evening of July 12, 1977, after a fellow cellmate, David Spurgeon, left for work, Fett talked to Bartlett on the telephone and told him that he had heard Spurgeon and defendant agree during a card game that Spurgeon would go to defendant's parents' house that night and obtain some drugs and smuggle them into jail on his return from work. A search of Spurgeon on his return shortly after 1:00 a.m. on the 13th resulted in the discovery of the drugs. This prosecution followed.

1. Defendant's first contention, which is that the evidence against him was legally insufficient, is meritless. Basically, defendant contends that Fett was, as a matter of law, unworthy of belief and that since his testimony was uncorroborated, the jury was not free to believe it. Actually, Fett's testimony was corroborated. For one thing, his tip to Bartlett was corroborated in part when the jailer found drugs in his search of Spurgeon, and in part by the testimony of Spurgeon, who although testifying that he did not get the drugs from defendant's house, admitted going to the house that night to get some tape recordings. The jury also had a copy of the transcript of Spurgeon's testimony at his guilty plea hearing, testimony which implicated defendant. Fett's testimony was also

corroborated in part by the fact that drugs which he claimed defendant supplied to him were apparently identical to drugs defendant supplied to Patty Schroeder, who also testified for the state. Defendant also had a motive for having Spurgeon smuggle drugs for him, as defendant, unlike Spurgeon, was being thoroughly searched on his return to jail from his job. In sum, it is clear to us that the evidence of defendant's guilt was sufficient.

2. Defendant's second contention is that the trial court erred in permitting Detective Bartlett to testify as to the details of what Fett told him on the telephone on the evening of the 12th.

Defendant's brief focuses our attention first on Rule 801(d)(1)(D), R.Evid., which provides that an extrajudicial statement is not hearsay if the declarant testifies and is subject to cross-examination concerning the statement and the statement is "(D) A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter." Defendant sees three problems with relying on this rule to justify the trial court's admission of the evidence: he contends (a) that Fett was not subject to cross-examination concerning the statement because he could not recall the conversation, (b) that the statement was not descriptive of an event or condition but was simply double hearsay, and (c) that the statement was not made "immediately" after his perception of the event.

Although the state argues that one could justify admission of the testimony by relying on Rule 801(d)(1)(D), the state would seem to prefer having us analyze this case in terms of Rule 801(d)(1)(B), which provides that a statement is not hearsay and is admissible substantively if the declarant testifies at the trial and is subject to cross-examination concerning the statement and the statement is "(B) consistent with this testimony and is offered to rebut an ex-

press or implied charge against him of recent fabrication or improper influence or motive."

■ Starting with the state's contention first, we agree that the defense, through its examination of Fett and in other ways, was trying to create the impression that Fett had an improper motive which may have prompted him to fabricate the charge that defendant participated in the drug smuggling attempt. The trouble with relying on Rule 801(d)(1)(B) is that the alleged motive, if it existed, existed before Fett spoke to Bartlett, and therefore the statement to Bartlett does not really rebut the impression defendant was trying to create.

■ Our examination of the record convinces us that there is no merit to defendant's claim that Fett was not subject to effective cross-examination or his claim that Fett's statement was not descriptive of an event or condition but was simply double hearsay.[1] A closer question is the question whether the statement should be deemed to have been made "immediately after" the event was perceived. The delay in this case consisted of the time after the conversation was overheard but before Spurgeon left for his job, as well as a delay in trying to get Detective Bartlett on the telephone. There was time for calculated misstatement and the statement was not made to one who had an equal opportunity to observe. Of the importance of the latter factor, *see* J. Weinstein, *Evidence—United States Rules,* § 803(1)[01]. On the other hand, Detective Bartlett, while not having an equal opportunity to observe or hear what defendant said, did have a means of testing the accuracy of the statement Fett said defendant made. He simply ordered Spurgeon searched on his return to jail, and this resulted in the discovery of evidence which suggested that Fett's extrajudicial statement was reliable.

1. The fact that double hearsay is involved does not matter so long as each part of the combined statements conforms to an exception to the hearsay rule. Rule 805, R.Evid. Here the statement that Fett overheard was a statement which qualifies as an admission by a party under Rule 801(d)(2), R.Evid.

■ Actually, we have concluded that we need not decide whether the evidence in question was admissible substantively under Rule 801(d)(1)(D), because our reading of the record indicates that the prior statement of Fett to Bartlett was not offered substantively to prove the truth of what Fett said but was offered nonsubstantively merely to corroborate his trial testimony. Rule 801(c) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Since the statement was offered nonsubstantively to corroborate Fett's trial testimony and since Fett was available for cross-examination, we conclude that the trial court did not commit prejudicial error here in admitting this evidence.

■ 3. Defendant's final contention is that the trial court erred in permitting the prosecutor to elicit testimony from Detective Bartlett that on July 14—the same day a doctor examined defendant's arms—he also looked at defendant's arms and observed puncture wounds and scar tissue consistent with defendant's having injected drugs into his veins. Defendant does not challenge the relevancy of this testimony because it was defendant who first got into the subject when on cross-examination of Bartlett he elicited evidence that Bartlett had had defendant's arms examined by a doctor on July 14. Rather, defendant contends that the testimony was erroneously admitted in that the state failed to qualify Bartlett as an expert.

The state argues that Bartlett only testified to what he saw and that first-hand observation did not require expert knowledge. Alternatively, the state argues that there was proper foundation qualifying Bartlett as an expert since he also testified that he had observed the arms of 20 to 30 people in 3 years who had been known users of hypodermic needles in taking drugs.

Our opinion is that since Bartlett did not just describe what he saw in a nonconclusory way, his testimony must be considered opinion testimony and that it is the kind of opinion testimony that requires expert knowledge. However, we believe that the state did introduce sufficient foundation to qualify him as an expert, and accordingly we conclude that the court properly allowed the evidence.

Affirmed.