Walter **SHAULL,** Individually and as Guardian Ad Litem for Randy Shaull, a Minor, both of Highmore, Hyde County, South Dakota, Plaintiffs and Appellants,

v.

Ben **HART,** Individually and by and through his Guardian Ad Litem Richard Hart, and his parents, Richard Hart and Lois Hart, all of Hughes County, South Dakota; Ross Peterson, a Minor, Individually and by and through his Guardian Ad Litem, Lee Peterson, and his parents, Lee Peterson and Catherine Peterson, all of Hyde County, South Dakota, Defendants and Appellees.

No. 13548.

Supreme Court of South Dakota.

Argued May 19, 1982.

Decided Dec. 15, 1982.

Ronald G. Schmidt of Schmidt, Schroyer, Colwill & Zinter, P.C., Pierre, for plaintiffs and appellants.

Robert C. Riter, Jr. of Riter, Mayer, Hofer & Riter, Pierre, for defendants and appellees.

HENDERSON, Justice.

## ACTION

Appellant Walter Shaull, individually and as guardian ad litem for his son, filed a complaint against appellees Harts and Petersons averring that said appellees were, in various ways, negligent in causing injury to appellant's son. Appellee Harts answered, asserting the affirmative defenses of contributory negligence and assumption of risk; additionally, they cross-claimed against appellee Petersons seeking indemnity or contribution in the event appellee Harts were found liable. Appellee Petersons answered appellant's complaint in a manner similar to appellee Harts' answer; additionally, they also cross-claimed against appellee Harts seeking indemnity or contribution.

Prior to trial, appellee Harts settled with appellant Shaulls; notwithstanding, appellants' motion to dismiss their claim against appellee Harts was denied. A trial was had and the jury returned a verdict in favor of appellees. Appellant Shaulls have appealed to this Court. We affirm.

## FACTS

Following a high school football game on October 26, 1979, a party was held on a farm approximately seven miles west of Highmore, South Dakota. Randy Shaull, Ben Hart and Ross Peterson each consumed beer at the party. Ben Hart left the farm in his pickup truck with Randy Shaull, Mary Cowan, and Ricki Kusser as passengers. All were seated in the front seat which created a crowded situation, the radio was playing, they were singing and intermittently talking, and one of the girls was seated so that she obstructed the shifting mechanism. The combined effect created difficult driving circumstances. Ross Peterson also left the farm at the same time with Billie Etbauer and Ben Aasby as passengers in his pickup truck. Ross Peterson passed the Hart pickup truck approximately one mile away from the farm.

Both pickups proceeded towards Highmore. Travel conditions were dark with

only a slight breeze. Since the road was gravel, the air was dusty. Testimony generally disclosed that the pickup trucks were traveling between 50 and 55 miles per hour and that there existed approximately 100 yards between the vehicles. Ross Peterson noticed that one of the headlights was burned out on the Hart vehicle and slowed down to 30 to 35 miles per hour. Soon thereafter, one of the passengers in the Peterson vehicle realized that the Hart vehicle had crashed into the ditch approximately two blocks behind the Peterson vehicle. Appellant Randy Shaull was injured in the accident.

The morning of the incident, a "mud grip" tire was placed on the front passenger side of the Hart vehicle to replace a flat tire. This resulted in a tire placement of three mud grip tires with one standard tread tire being on the front driver's side of the vehicle at the time of the accident. Both of Ben Hart's parents testified that prior to the accident the vehicle pulled to one side when the brakes were applied.

Hyde County Deputy Sheriff Oliver Olson investigated the accident and filed an accident report. At trial, Deputy Olson testified that approximately one hour after the accident, Ben Hart told him that he had been "driving about fifty miles per hour, hit some loose gravel and lost it." According to Deputy Olson, Ben made no mention of the Peterson vehicle. Ben Hart testified, "I remember seeing Ross's brake lights come on and that's when I stepped on my brakes and then I lost control of it." In response to being questioned about the distance between the pickups when he first saw the brake lights of the Peterson pickup come on, Ben Hart testified, "I really don't know for sure, it was—I would say 50 yards, but I am not exactly positive." Ben Hart told Deputy Olson that he had been drinking the night of the accident. South Dakota Highway Patrolman Pat Murphy, who observed Ben Hart subsequent to the accident, testified that "it appeared to me [Ben Hart] had been drinking because he had very bloodshot eyes." Four separate issues are presented by the briefs.

## ISSUES

### I.

DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR BY ADMITTING INTO EVIDENCE THE INVESTIGATING OFFICER'S ACCIDENT REPORT? WE HOLD THAT IT DID NOT.

### II.

DID THE TRIAL COURT ERR IN INSTRUCTING THE JURY THAT MINOR MOTOR VEHICLE OPERATORS ARE HELD TO A NON–ADULT STANDARD OF CARE? WE HOLD THAT UNDER THE STATE OF THE RECORD IT DID NOT.

### III.

DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR BY DENYING APPELLANT'S PRE–TRIAL MOTION TO DISMISS THE ACTION AGAINST APPELLEE HARTS? WE HOLD THAT IT DID NOT.

### IV.

DID THE TRIAL COURT ERR AS A MATTER OF LAW IN DENYING APPELLANT'S MOTION FOR A DIRECTED VERDICT AND MOTION FOR JUDGMENT N.O.V. ON THE ISSUE OF LIABILITY? WE HOLD THAT IT DID NOT.

## DECISION

### I.

■ Appellants contend that the trial court erred when it admitted into evidence the accident report of Deputy Olson which indicated that the primary cause of the accident was "speed + loose gravel." Appellant believes that introduction of the accident report invaded the province of the jury to determine the causation of the accident. We recently addressed the viability of officer's opinions concerning causation and held:

Appellant argues that the investigating officer should not have been allowed to express his opinion regarding the cause of the accident because he was not an eyewitness and because his opinion invaded the province of the jury by stating a conclusion upon a point in issue. Appellant argues that because South Dakota did not adopt Rule 704 of the Federal Rules of Evidence, which allows testimony embracing an ultimate issue, the officer's statement that appellant was at fault should have been excluded by the trial court. We agree. The cause of the accident was a question for the jury to determine. No expert testimony was required on this issue, nor was the officer's testimony offered as such. This testimony was not so inherently prejudicial as to require reversal, however, in view of the fact that there was little or no question but that appellant had in fact crossed the highway in the face of Ebach's on-coming vehicle. Although appellant attempted to establish that Ebach may have been traveling at an excessive rate of speed, there is no evidence to support such a contention. Indeed, appellant herself testified that she did not see Ebach's vehicle before she pulled away from the stop sign, nor did she remember whether she looked to her right or left before attempting to cross the highway. Given the state of the record, appellant has not established that the jury might and properly would have returned a different verdict had the officer's testimony not been admitted. Accordingly, no prejudicial error has been shown. *Alberts v. Mutual Service Casualty Insurance Co.,* 80 S.D. 303, 123 N.W.2d 96 (1963).

*Watkins v. Ebach,* 291 N.W.2d 765, 768 (S.D.1980).

Likewise, we are unconvinced here that the introduction of the accident report was so inherently prejudicial as to warrant reversal of the trial court. Deputy Olson was appellants' witness at trial. On direct examination, counsel for appellants extracted portions of the report favorable to their position. Counsel for appellees introduced the report into evidence on cross-examination pursuant to SDCL 19–14–21, SDCL 19–14–22, and SDCL 19–14–23 to remove any prejudice to his clients caused by the jury hearing only portions of the report.

Testimony established that both vehicles had been traveling between 50 and 55 miles per hour before appellee Ross Peterson began to slow down. There is no question but that the accident occurred on a gravel road. Appellee Ben Hart told Deputy Olson that he had been "driving about fifty miles per hour, hit some loose gravel and lost it." At trial, appellee Ben Hart testified that he stepped on his brakes and lost control. We believe that the jury could have independently established "speed and loose gravel" as the cause of the accident.

■ Prejudicial error is that error without which the jury would have probably returned a different verdict. *Schmidt v. Wildcat Cave, Inc.,* 261 N.W.2d 114 (S.D. 1977). We hold that prejudicial error is lacking on this issue.

## II.

■ Appellants next urge that the trial court erred in instructing the jury that appellee Ben Hart, a minor, should be held to a non-adult standard of care.[1] However, appellant did not object to this jury instruction at the jury instruction settlement conference. When exception is not taken to a jury instruction, that instruction becomes the law of the case unless the question is presented by a motion for a directed verdict. *Heiser v. Rodway,* 247 N.W.2d 65 (S.D.1976); *Neb. Elec. Generation & Trans. Co-Op. v. Cady,* 90 S.D. 233, 241 N.W.2d 139 (1976); *State Highway Commission v. Fortune,* 77 S.D. 302, 91 N.W.2d 675 (1958). SDCL 15–6–51(b) provides in pertinent part: "No grounds of objection to the giving or the refusing of an instruction shall be considered either on motion for new trial or appeal, unless presented to the court upon the 'settlement' of such instruction." Here, appellant Shaulls raised the issue of

---

**1.** *See* South Dakota Pattern Jury Instructions, Vol. I, § 10.05.

the instruction on a motion for new trial. This was untimely.

### III.

Appellants further argue that the trial court erred in failing to dismiss appellee Harts from this action after a settlement agreement had been reached. In effect, appellant is alleging that in failing to dismiss appellee Harts, the trial court (1) forced appellant to be burdened with proving that both appellee Harts and appellee Petersons were liable and (2) that the jury would be confused and the instructions unduly complicated.

We find appellants' view unpersuasive. Appellee Petersons aptly counter with the argument that if appellee Harts would have been dismissed, the cross-claim brought against them by appellee Petersons would have been extinguished, thus removing the ability of appellee Petersons to determine the potential relative degree of liability between themselves and the Harts. Since the jury found that neither appellee Harts nor appellee Petersons were liable, appellant cannot be said to have been prejudiced by denial of a motion which if granted, would have only affected the relative degrees of fault.

### IV.

Lastly, appellant Shaulls assert that the trial court erred in denying their motion for a directed verdict or judgment n.o.v. on the issue of liability. Upon our examination of the record herein, we conclude that several factual questions existed for the jury regarding whether or not appellant Randy Shaull was contributorily negligent or had assumed the risk of an accident on the evening of October 26, 1979. *Myers v. Lennox Co-Op. Ass'n,* 307 N.W.2d 863 (S.D. 1981). There was a factual question as to appellant Shaull's violation of SDCL 32–26–43 which provides:

> No person shall drive a vehicle when it is so loaded, or when there are in the front seat such a number of persons, exceeding three, as to obstruct the view of the driver to the front or sides of the vehicle or as to interfere with the driver's control over the driving mechanism of the vehicle.

The jury was instructed properly on the effect of a violation of this statute.

Therefore, the decision of the trial court is affirmed.

All the Justices concur.