**STATE of South Dakota,
Plaintiff/Appellee,**

v.

**Robert E. CROSS, Defendant/Appellant.**

**No. 17147.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 10, 1991.

Decided April 10, 1991.

Roger A. Tellinghuisen, Atty. Gen., Scott Bogue, Asst. Atty. Gen., Pierre, for plaintiff/appellee.

Jana Miner Lunsford of Johnson, Eklund & Abourezk, Gregory, for defendant/appellant.

HERTZ, Acting Justice.

Robert Eugene Cross (Cross), following a trial to the court, was convicted of first degree rape. SDCL 22–22–1(4). On appeal Cross argues that the trial court erred by tolling the time period of his escape from custody from the operation of SDCL 23A–44–5.1 (the 180–day rule) since the state did not file its motion for good cause delay within 180 days of Cross' initial appearance. We affirm.

FACTS

Cross was arrested on September 3, 1988, and made his initial appearance on September 6, 1988. The 180th day from his initial appearance was March 5, 1989. Cross, however, escaped from Winner's city jail on October 17, 1988. Between this date and March 5, 1989, the 180th day, state did not make any motion to toll the 180 day provision of SDCL 23A–44–5.1.

Cross was arrested in North Carolina on October 31, 1989, and returned to South Dakota's jurisdiction on December 7, 1989. On January 31, 1990, state made a motion to toll the 416 day period from the date of Cross' escape to the date of his return to

South Dakota's jurisdiction. Cross did not file a motion to dismiss due to the expiration of 180 days.

On February 16, 1990, the trial court entered findings of fact and conclusions of law granting state's motion. The court concluded that Cross had been a fugitive for 416 days and tolled that time period.

Cross was tried on March 5, 1990. Judgment of conviction was filed on March 29, 1990.

## ISSUE

Whether the trial court erred in using Cross' escape to toll SDCL 23A–44–5.1 when state failed to file a motion for good cause delay prior to the expiration of the 180 day period?

## ANALYSIS

SDCL 23A–44–5.1 provides:

The prosecution shall dispose of all criminal cases by plea of guilty or nolo contendere, trial or dismissal within one hundred eighty days from the date the defendant has first appeared before a judicial officer on the complaint or indictment. Any period of delay shall be excluded if the trial court finds good cause for the delay. In the event of the prosecution's failure to dispose of the action within the time limit required by this section, the action shall be dismissed.

In *State v. Hoffman*, 409 N.W.2d 373, 375 (S.D.1987), this court observed:

We believe SDCL 23A–44–5.1 is clear and unambiguous on its face. It requires a disposition of criminal matters within 180 days lacking good cause for delay.

    \*    \*    \*    \*    \*    \*

We hold that once a defendant has established the running of the 180–day time period he has established a prima facie case for dismissal.

    \*    \*    \*    \*    \*    \*

The 180–day period may be tolled if State moves for and can show good cause for delay. To foster certainty and finality, we hold that a motion for a good cause delay must be filed prior to the expiration of the 180–day period. We recognize, however, that SDCL 23A–44–5.1 does not on its face require State to file a motion for good cause delay prior to the expiration of the 180–day period. Because state failed to file a motion for good cause delay during the 180–day period, Cross argues that this case must be dismissed.

*Hoffman, supra,* however, is not applicable in all situations. In *State v. Tiedeman,* 433 N.W.2d 237 (S.D.1988), state failed to file a motion for good cause delay. Because *Hoffman* did not address a case where a dismissal and subsequent refiling of criminal charges delays the advancement of the case to trial, this court found *Hoffman* distinguishable and not controlling. *Hoffman* also did not address the question of delay caused solely by a defendant's escape.

In other states the rule under speedy trial statutes is that where the defendant is a fugitive from justice and delay beyond the statutory period is thereby occasioned, the defendant may not take advantage of the delay he is responsible for and is not entitled to discharge for failure to accord him a speedy trial. Annotation, *Waiver or Loss of Accused's Right to Speedy Trial,* 57 A.L.R.2d 302 (1958); 21A Am.Jur.2d, *Criminal Law* § 861 (1981).

In *Tiedeman, supra,* this court sought guidance from Pennsylvania case law in making its determination. In cases where delay is caused by a defendant's escape and fugitive status Pennsylvania follows the general rule set forth above. *Com. v. Fisher,* 334 Pa.Super. 449, 483 A.2d 537 (1984). In *Fisher,* the court noted that delay is a defendant's best lawyer; where a defendant assents to a period of delay and later attempts to take advantage of it, courts should be loath to find a violation of an accused's speedy trial rights.

Rule 1100 [the 180–day rule] "serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society," *Commonwealth v. Brocklehurst,* 491 Pa. 151, 153–154, 420 A.2d 385, 387

(1980); *Commonwealth v. Hamilton*, 449 Pa. 297 297 A.2d 127 (1972). In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. *Commonwealth v. Johnson*, 487 Pa. 197, 409 A.2d 308, n. 4 (1980). The administrative mandate of Rule 1100 certainly was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

. . . .

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 1100 must be construed in a manner consistent with society's right to punish and deter crime. In considering matters such as that now before us, courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well. Strained and illogical judicial construction adds nothing to our search for justice, but only serves to expand the already bloated arsenal of the unscrupulous criminal determined to manipulate the system.

*Com. v. Genovese*, 493 Pa. 65, 69–70, 72, 425 A.2d 367, 369–70, 371 (1981).

This case is not a case of delay caused by docket congestion or ineffective scheduling practices. *Hoffman, supra; State v. Ven Osdel*, 462 N.W.2d 890 (S.D.1990). This is a case where the delay was solely attributable to Cross' escape and status as a fugitive for well over one year. SDCL 23A–44–5.1 was not enacted to reward this type of conduct. In accordance with *Tiedeman, supra,* the trial court correctly tolled the time period between Cross' escape and return to South Dakota's jurisdiction.

The judgment is affirmed.

MILLER, C.J., and SABERS, J., concur.

WUEST and HENDERSON, JJ., concur specially.

AMUNDSON, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

WUEST, Justice (specially concurring).

I concur in the majority opinion and agree with many of the comments in Justice Henderson's special writing.

HENDERSON, Justice (specially concurring).

Willingly and proudly I served under the Fosheim Court *. As I write this special writing, the "old 180–day rule" will be supplanted with a new look. This "new 180–day rule" was lifted, by and large, from our legal brothers in the State of Nebraska where it has served them well. There is a great deal of settled law, in Nebraska, under the "new 180–day rule."

With the advent of this "new 180–day rule," on the horizon in this state, I wish to join this opinion; however, I do so with reservations. First of all, I concurred in result in *Tiedeman* due to one principal reason, namely that the charges which Tiedeman first faced were not the charges upon which he was ultimately convicted. However, I did not think the State clearly substantiated their cause for the delay in prosecution of that case.

In *Ven Osdel*, this special writer wrote the majority opinion, which was joined by Justices Wuest and Morgan, both of whom served on the Fosheim Court. Justice Sabers and Chief Justice Miller both dissented in *Ven Osdel*. The Court in the present case, is comprised of Chief Justice Miller, Justice Wuest, Justice Sabers, Acting Justice Hertz (who is a senior circuit court judge in this state), and myself. The holding in *Ven Osdel* was to reverse the circuit court because the trial court permitted a case to be prosecuted to a conviction,

---

* Jon Fosheim of Huron, South Dakota, served on the South Dakota Supreme Court from 1979 to 1986, serving as Chief Justice for this Court four of those years.

shunting aside the 180–day rule, even though there was docket congestion and ineffective scheduling practices which took the prosecution beyond the 180–day rule. Justice Morgan has retired since the *Ven Osdel* decision and did not participate in the decision to establish the "new 180–day rule."

All of this background brings me to my total disagreement with a quote within the *Genovese* citation from Pennsylvania in 1981. I refer to such phrases as "good faith prosecution" and "no misconduct" with respect to the Commonwealth (in other words, the prosecution).

The "old 180–day rule" has served this state very well. We have experienced delay—nightmares in the prosecution of cases in this state. The "Fosheim Court" moved to eradicate these nightmares so that the courts of this state were not clogged with stale criminal cases. As a result of the "old 180–day rule," hundreds of stale cases were disposed of and the prosecutors of South Dakota became cognizant of a rule that had teeth; they learned that they had to go about their prosecutorial business in good, workmanlike practice. I do not believe that it serves this Court or the administration of justice well in this state, to allow prosecutors an "escape hatch" to avoid their failure to abide by a speedy trial rule to permit them to express "we acted in good faith" or there was "no misconduct on our part;" "good faith" is, in my opinion, an improper criteria; likewise, "no misconduct," expressed in that context. The speedy trial rule is to further the prosecution of cases in an effective manner and to afford defendants a right to have their case tried within a reasonable time. The citizens of this state, who are witnesses and victims, should not have to wait interminably for a case to come to trial. These victims and witnesses have rights, also. *Genovese*, therefore, has language, which this Court quoted with approval, that I find far too liberal and causes the weights of justice to be balanced in favor of the State on a speedy trial rule, which is inherently inconsistent with that which is being sought to be accomplished, namely a speedy trial just like the United States Con-

stitution prescribes. United States Constitution, Amendment 6, expresses:

> In all criminal prosecutions, *the accused shall enjoy the right to a speedy* and *public trial* by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; and to have the assistance of counsel for his defense. (emphasis supplied mine).

Lastly, I wish to express that in all of my reading on speedy trial rules, the reoccurring principle is set forth that it is the state's responsibility to prosecute cases; it is not the defendant's responsibility, nor his counsel, to prosecute the case. *United States v. Didier*, 542 F.2d 1182, 1187 (2d Cir.1976); *People v. Deason*, 670 P.2d 792 (Colo.1983); *Commonwealth v. McLaughlin*, 338 Pa.Super. 615, 488 A.2d 63 (1985). The "old 180–day rule" in no way, in this state, served to expand the "bloated arsenal of the unscrupulous criminal determined to manipulate the system;" rather, that rule served to update, in current fashion, the hundreds of cases that lingered on the vine, in this state, which was a disgrace to the administration of justice. Proudly, I had a part of that rule and notwithstanding the whining, weeping and wailing which floated across the prairie from Wyoming to Iowa from many prosecutors, while the "old 180–day rule" was in existence, simply because they had to keep their nose to the legal grindstone, an effective prosecution of criminal cases took place—not for days—not for months—but for several years. We shall see what the "new 180–day rule" births. Hopefully, it will be as effective as the "old 180–day rule." History teaches you where you've been so you know where you're going.