STATE of South Dakota, Plaintiff and Appellee,

v.

Rocky C. BEYNON, Defendant and Appellant.

No. 17529.

Supreme Court of South Dakota.

Considered on Briefs Feb. 11, 1992.

Decided April 29, 1992.

---

Mark Barnett, Atty. Gen., Patricia Cronin, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Drake A. Titze, Sioux Falls, for defendant and appellant.

WUEST, Justice.

Defendant (Beynon) was found guilty by a Clark County Jury of aggravated assault upon a law enforcement officer in violation of SDCL 22–18–1.1(3).[1] The trial court sentenced Beynon to twelve years in the South Dakota State Penitentiary with three years suspended upon certain conditions. Beynon filed a motion for a new trial which was denied. Beynon appeals raising the following issues:

1. Whether the State failed to prosecute Beynon within 180 days in violation of SDCL 23A–44–5.1.

2. Whether the trial court erred by admitting the officer's police reports as evidence.

3. Whether the trial court erred in denying Beynon's motion for a new trial based upon newly discovered evidence.

4. Whether the jury verdict was sufficiently supported by the evidence.

5. Whether Beynon's due process rights were violated due to ineffective assistance of counsel.

We affirm.

During the trial, Officer James Lentsch of the Clark City Police Department testified as follows. At approximately 1:30 A.M., on May 3, 1990, Officer Lentsch was seated in his patrol car monitoring traffic in the city of Clark on Highway 212. Lentsch's patrol car was positioned in the south end of an alley which intersects Highway 212 in the middle of a residential area. At the time, Lentsch was visiting with Bill Holmes who was standing next to the patrol car with his friend Penney Leetch. Lentsch was fully uniformed at the time in question. His patrol car was clearly marked as a police vehicle.

Suddenly, a vehicle came sliding around the corner at the north end of the alley, sped through the alley and screeched to a halt behind the patrol car. Lentsch asked Holmes to call for "back-up" if any trouble developed. As the individual charged the patrol car, Lentsch recognized him as Beynon. Beynon then jerked open the door of the patrol car, reached inside, and grabbed Officer Lentsch by the front of his uniform with both hands. At this time, Holmes and Leetch left to get help.

Visibly upset, Beynon tried to jerk Lentsch out of the patrol car shouting, "I'm tired of you fucking with my family. I want to settle this once and for all."[2] The officer freed himself from Beynon's grasp and picked up his flashlight as he began to exit the patrol car. Beynon continued to use obscenities toward Lentsch and then grabbed for the flashlight which flew up and struck Lentsch in the chin. Once out of the patrol car, Lentsch and Beynon struggled over possession of the flashlight until finally the officer released the flashlight and pushed Beynon away. Beynon tossed the flashlight on the ground. Beynon then punched Officer Lentsch in the jaw with a closed fist. This blow caused Lentsch pain and "dazzled [him] a little bit." Beynon then swung again, but the now prepared Officer Lentsch was able to move out of the way. At that point, Beynon lost his balance and went down on one hand and one knee. Officer Lentsch then told Beynon he was under arrest and tried to detain him.

---

1. SDCL 22–18–1.1(3) (1988) provides in pertinent part:

 Any person who:

 $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$

 (3) Attempts to cause or knowingly causes any bodily injury to a law enforcement officer or other public officer engaged in the performance of his duties;

 $\cdot$ $\cdot$ $\cdot$ $\cdot$

 is guilty of aggravated assault. Aggravated assault is a Class 3 felony.

2. Lentsch cited Beynon's wife for speeding approximately forty minutes prior to this incident.

When the officer grasped Beynon's shoulders, Beynon maneuvered away from him, and the two ended up wrestling on the ground.

Holmes and Leetch testified they saw the beginning and the end of the altercation. Neither of them saw Beynon actually strike the officer, however, since they had retreated inside a residence to call for assistance. When they returned, they saw Lentsch and Beynon wrestling on the ground. At that point, Beynon said "I give up, handcuff me." As the officer reached for his handcuffs, Beynon flipped around causing the officer to lose his grip and his balance. Beynon then escaped and fled into the street on foot. Officer Lentsch did not pursue Beynon at that time but chose to wait for back-up. Beynon was apprehended later that day.

During the scuffle, Beynon ripped the buttons off the officer's uniform and tore his T-shirt all the way up the side. In addition, Lentsch's elbow had an abrasion or cut which was bleeding, and he developed a black eye. Photographs of these injuries were admitted into evidence. We will discuss further facts relevant to each issue discussed.

## I.

Beynon made his initial appearance before a magistrate on May 3, 1990. After Beynon's initial appearance, he hired attorney Sean O'Brien (O'Brien), and the matter proceeded to trial. On October 1, 1990, only seventeen days prior to the scheduled trial date of October 18, Beynon's attorney filed a motion seeking the court's permission to withdraw. This motion to withdraw was primarily based on Beynon's disagreement with the manner in which attorney O'Brien was handling the case as well as fee collection problems.

After hearing attorney O'Brien's request to withdraw, the court asked the prosecution for comments. The State's Attorney objected to the withdrawal as it would cause a delay beyond the 180–day speedy trial period provided in SDCL 23A–44–5.1 (180–day rule) and asked for a waiver.[3] The court then addressed Beynon as follows:

> THE COURT: Mr. Beynon, do you understand the rule is that your case should be tried within 180 days from your first appearance in court and if I grant the Motion now for Mr. O'Brien to withdraw, and you obtain new counsel, and he needs to prepare, he or she, it may take more than that 180–days. Are you willing to let that ride for beyond that 180 days?
>
> DEFENDANT BEYNON: Yes, I am.
>
> THE COURT: O.K.
>
> DEFENDANT BEYNON: I don't feel I have any choice.
>
> THE COURT: But that would be your preference; you would rather have the Motion granted so you could get other counsel, even if it were going to take more than the 180 days?
>
> DEFENDANT BEYNON: Yes.
>
> THE COURT: Well, alright. I'm going to grant the Motion, Mr. O'Brien, and allow you to withdraw from counsel for Mr. Beynon.

Three days later, after Beynon applied for court-appointed counsel, the trial court entered a written order of withdrawal, allowing O'Brien to withdraw. On that same date, the court appointed Attorney Vincent Foley (Foley) as Beynon's new counsel. Beynon's trial commenced November 29, 1990, despite Beynon's claim that the 180–day period had run.

■ Beynon asserts the trial court should have dismissed the action based

---

**3.** At all times relevant to this appeal, SDCL 23A–44–5.1 (1988) provided:

The prosecution shall dispose of all criminal cases by plea of guilty or nolo contendere, trial or dismissal within one hundred eighty days from the date the defendant has first appeared before a judicial officer on the complaint or indictment. Any period of delay shall be excluded if the trial court finds good cause for the

delay. In the event of the prosecution's failure to dispose of the action within the time limit required by this section, the action shall be dismissed.

The 180–day rule was amended in 1991. *See* note 5, *infra.* Since the initial appearance occurred on May 3, the 180–day speedy trial period expired on October 30.

upon the State's failure to prosecute him within 180 days of his initial appearance in violation of SDCL 23A–44–5.1. Beynon argues the State violated the 180–day rule because it made no motion for good cause extension, and because the court did not enter an order finding that "good cause" existed for the delay.

Beynon's argument hinges on his assertion that he did not waive his statutory right to a speedy trial. Beynon relies on the fact that his new trial counsel did not request additional time to prepare. In addition, Beynon asserts he was not represented by counsel when he made the decision to let the 180–day period "slide," and thus, if he waived the 180–day rule, he did not do so voluntarily. Beynon's assertion that he was not represented by counsel is not supported by the record.[4] Nor do we find Beynon's other arguments convincing.

A. *Can the 180–Day Rule be Waived?*

At the time of Beynon's initial appearance, SDCL 23A–44–5.1 contained no waiver provision. Thus, we must initially determine whether the 180–day Rule could be waived. In *State v. Shilvock–Havird*, 472 N.W.2d 773, 776 (S.D.1991), we held the record did not establish a waiver of the 180–day speedy trial requirement. The facts which supported that holding were materially different from the facts present in this case. The *Shilvock–Havird* holding implied a defendant could waive the 180–day rule.

We have previously looked to Pennsylvania case law for guidance regarding the 180–day rule. *State v. Cross*, 468 N.W.2d 419, 420 (S.D.1991); *State v. Tiedeman*, 433 N.W.2d 237 (S.D.1988). The Pennsylvania Supreme Court has held that the speedy trial rule, "like the right to a speedy trial which it protects, may be waived." *Com. v. Brown*, 497 Pa. 7, 438 A.2d 592, 594 (1981); *Com. v. Manley*, 491 Pa. 461, 421 A.2d 636, 640 (1980); *Com. v. Myrick*, 468 Pa. 155, 159, 360 A.2d 598, 600 (1976). Likewise, the Iowa Supreme Court has held

that, even though waiver is not mentioned in the Iowa speedy trial rule, "[b]ecause the right to a speedy trial is personal, it is one which a defendant may forego at his election[.]" *State v. Magnuson*, 308 N.W.2d 83, 85 (Iowa 1981). *See also State v. Mary*, 401 N.W.2d 239, 241 (Iowa App. 1986); *People v. Prosser*, 309 N.Y. 353, 130 N.E.2d 891, 896, 57 A.L.R.2d 295, 301 (1955); 21A Am.Jur.2d, *Criminal Law*, § 865 (1981); Annotation, *Waiver or Loss of Accused's Right to Speedy Trial*, 57 A.L.R.2d 302, 305, 307 (1958). "There are no formal requirements for a valid waiver ...; '[s]o long as there is an indication, on the record, that the waiver is the informed and voluntary decision of the defendant, it will be accorded prima facie validity.'" *Brown*, 438 A.2d at 594 (quoting *Myrick*, 360 A.2d at 600) (prior to 1982, the Pennsylvania speedy trial rule contained no express provision providing for waiver). *Accord Com. v. Green*, 503 Pa. 278, 469 A.2d 552, 554 (1983). *See also State v. Williams*, 211 Neb. 650, 319 N.W.2d 748, 751 (1982). The burden is on the state to show any waiver was the product of an informed and voluntary decision. *Manley*, 421 A.2d at 640; *Myrick*, 360 A.2d at 600.

B. *Was Beynon's Waiver Knowing and Voluntary?*

The trial court apprised Beynon of his right to a trial conducted within 180 days of his first appearance. The court then asked Beynon personally whether he understood that, if the court granted the motion to withdraw, it could result in his trial counsel needing additional time to prepare beyond the 180–day period. Beynon affirmatively indicated he was "willing to let that ride beyond the 180 days" in order to get new counsel. The court then indicated it would allow O'Brien to withdraw.

Contrary to Beynon's argument, his waiver was not rendered involuntary because the trial court conditioned its granting Beynon's motion on his waiver of the 180–day rule. "[W]hen an accused requests a continuance near the end of the

---

**4.** The record clearly shows that the trial court did not grant O'Brien's Motion to Withdraw until *after* Beynon agreed to let the 180–day period "slide." Indeed, O'Brien was not official-ly released from representing Beynon until three days after the hearing, when the court entered its Order of Withdrawal and appointed Foley as Beynon's new counsel.

[speedy trial rule] period, a court may condition its approval on the accused's agreement to a trial date beyond the period." *Com. v. Krasner*, 285 Pa.Super. 389, 427 A.2d 1169, 1174 (1981). While it is true Beynon did not formally request a continuance, his motion for new counsel within seventeen days of the trial required it. "[A] defendant may not take advantage of the delay he is responsible for ..." *Cross*, 468 N.W.2d at 420. "[D]elay is a defendant's best lawyer; where a defendant assents to a period of delay and later attempts to take advantage of it, courts should be loath to find a violation of an accused's speedy trial rights." *Id.* (Citing *Com. v. Fisher*, 334 Pa.Super. 449, 483 A.2d 537 (1984)).

We conclude Beynon knowingly and voluntarily waived his right to a jury trial within the 180–day period. Thus, the state was not required to move for a "good cause" extension, and the trial court was correct in refusing to dismiss the charges against Beynon.[5]

## II.

■■■ Beynon next contends the trial court abused its discretion in admitting Lentsch's police report and a written statement prepared by Lentsch soon after the May 3, 1990 incident. Beynon argues the items were irrelevant and constituted inadmissible hearsay.[6] The report and statement in question described what occurred during the incident between Beynon and Lentsch. They also included verbal exchanges between Lentsch and Beynon.

During the State's case-in-chief, Officer Lentsch testified as to the events surrounding Beynon's attack upon him. Specifically, the officer testified that after he was out of the patrol car, Beynon struck him in the face, then took another swing which may or may not have grazed him. Lentsch then told Beynon he was under arrest. This testimony was substantially consistent with the report.

On cross-examination, Beynon's counsel tried to impeach the officer's testimony by pointing out inconsistencies between the police report and the statement. The statement indicated Lentsch told Beynon he was under arrest before the second blow. After marking the reports for identification and handing them to Officer Lentsch, defense counsel read verbatim excerpts from the documents and asked Officer Lentsch whether certain statements were true. The State's Attorney objected. The trial court warned Beynon's counsel that, if he was going to have Officer Lentsch testify as to the contents of the exhibits, they should be offered into evidence.

On redirect, the State marked the two reports and moved for their admission into evidence. The trial court, overruling Beynon's objection, found both reports to be relevant and deemed them non-hearsay as statements personally prepared by the officer who was testifying. The court noted that "inasmuch as the defendant has inquired of these particular statements, I think it's only proper that they be admitted to the jury."

"We have previously stated that before we will disturb an evidentiary ruling, it

---

**5.** To prevent misleading the prosecutors of this state, we point out that SDCL 23A–44–5.1 was amended in 1991 to provide:

(1) Every person indicted, informed or complained against for any offense shall be brought to trial within one hundred eighty days, and such time shall be computed as provided in this section.

. . . . .

(4) The following periods shall be excluded in computing the time for trial:

. . . . .

(b) The period of delay resulting from a continuance granted at the request or with the consent of the defendant or his counsel *pro-*

*vided it is approved by the court and a written order filed.* A defendant without counsel shall not be deemed to have consented to a continuance unless he has been advised by the court of his right to a speedy trial and the effect of his consent[.]

(Emphasis added). Since the statute was amended after Beynon's waiver, the amendments are not relevant to this appeal.

**6.** Beynon also argues the reports were of a "confidential nature." The statutes Beynon relies upon (primarily SDCL 23–6–14) apply only to Bureau of Statistics files and records. They do not apply here.

must be determined that an abuse of discretion has occurred.... An abuse of discretion 'refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence.'" *State v. Woodfork*, 454 N.W.2d 332, 335 (S.D.1990) (citing *State v. Bartlett*, 411 N.W.2d 411, 414 (S.D.1987)).

State relies upon SDCL 19–9–13 which is equivalent to Fed.R.Evid. 106 for support of its argument that the reports were admissible.[7] SDCL 19–9–13 (1987) provides:

When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

Rule 106:

is an expression of the rule of completeness.... [It] is based on two considerations. The first is the misleading impression created by taking matters out of context. The second is the inadequacy of repair work when delayed to a point later in the trial.... The rule does not in anyway circumscribe the right of the adversary to develop the matter on cross-examination or as part of his own case.

Fed.R.Evid. 106 advisory committee's note.[8]

Under circumstances very similar to those before us, the Seventh Circuit Court of Appeals upheld a district court's admission of memoranda written by a government witness. *United States v. Baron*, 602 F.2d 1248 (7th Circuit), *cert. denied*, 444 U.S. 967, 100 S.Ct. 456, 62 L.Ed.2d 380 (1979). During cross-examination of the government witness, defense counsel referred repeatedly to the memoranda and brought out discrepancies between the memoranda and the witness' trial testimony. In the course of this cross-examination, portions of the memoranda that were assertedly inconsistent were read to the witness. *Id.* at 1250–51. The court of appeals held that "in these circumstances it would have been unfair and extremely confusing to the jury not to admit the memoranda. The memoranda were thus admissible under Rule 106 of the Federal Rules of Evidence." *Id.* at 1252. *Accord, United States v. Rubin*, 609 F.2d 51, 63 (2nd Cir. 1979), *aff'd on other grounds*, 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981). In such circumstances, the "rehabilitative use of prior consistent statements is in accord with the principle of completeness promoted by Rule 106." *United States v. Andrade*, 788 F.2d 521, 533 (8th Cir.), *cert. denied*, 479 U.S. 963, 107 S.Ct. 462, 93 L.Ed.2d 408 (1986).

We have recognized the doctrine of completeness in other contexts. In *Shaull v. Hart*, 327 N.W.2d 50 (S.D.1982), this Court held that an accident report prepared by the investigating officer who testified for the plaintiff was properly admitted into evidence after plaintiffs had extracted portions of the report favorable to their position. *Id.* at 53. Although other evidentiary rules were cited as the basis for the defendants' request to introduce the report, the justification for admission was "to remove any prejudice to [defendants] caused by the jury hearing only portions of the report." *Id. See also State v. Hoover*, 89 S.D. 608, 236 N.W.2d 635, 640 (1975) (when part of a conversation, transaction or writing is introduced by one party, the other party may, as a rule, introduce the entire conversation, transaction or writing). Since Beynon's counsel read verbatim portions of the reports inferring they were inconsistent with Officer Lentsch's testimo-

---

**7.** SDCL 23A–22–2 (1988) provides the rules of evidence in civil cases also apply to criminal cases, unless specifically excepted by statute.

**8.** The United States Supreme Court has recognized Fed.R.Evid. 106 and the common-law doctrine of completeness which underlies the rule. Moreover, the Court stated:

when one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completeness is *ipso facto* relevant and therefore admissible under Rules 401 and 402.

*Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172, 109 S.Ct. 439, 451, 102 L.Ed.2d 445, 465 (1988) (citing 1 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 106[02], p. 106–20 (1986)).

ny and with each other, Beynon cannot complain because the reports were admitted to prevent jury confusion.

Beynon argues SDCL 19–9–13 does not apply because he did not formally "introduce" the reports. However, introduction within the meaning of the rule applies to an oral quotation from a part of the document. *Burke v. State,* 484 A.2d 490, 497 (Del. 1984) (interpreting identical rule of evidence). "[T]he offer of the document itself, in whole or in part, is unnecessary to the application of the Rule." *Id.* (citing *Rubin, supra; Baron, supra;* 21 C. Wright & K. Graham, *Federal Practice and Procedure* § 5075 (1977)). Here, Officer Lentsch's reports were marked as exhibits by defense counsel. Defense counsel read a substantial portion of the officer's first report verbatim on cross-examination. We conclude this was an "introduction" of the portions of the report read for purposes of SDCL 19–9–13. To hold otherwise would permit a proponent to "get a lot of mileage out of the document without bringing [SDCL 19–9–13] into play by simply delaying its 'introduction.'" C. Wright & K. Graham, *supra,* at 356–58 (the word "introduced" ought to be interpreted to mean "utilized in court").

There is disagreement among legal scholars as to whether Rule 106 permits the introduction of otherwise inadmissible evidence, such as hearsay. *See* J. Larson, South Dakota Evidence § 106.1 (1991). *Compare* C. Wright & K. Graham, *supra,* § 5078 *with* J. Weinstein, M. Berger, *Weinstein's Evidence,* ¶ 106[1], at 106–13 (1991). We need not resolve this question.

Generally, police reports are not admissible against an accused in a criminal case as they constitute inadmissible hearsay. *See* SDCL 19–16–12 (Fed.R.Evid. 803(8)).[9] However, the reports here did not constitute inadmissible hearsay. They were, for the most part, memorializations of events occurring when Beynon assaulted Lentsch. Lentsch testified at trial and was subjected to cross-examination. The reports were not introduced to prove the truth of the matters asserted therein, that Beynon assaulted Lentsch; but instead, were introduced to rehabilitate Lentsch and to show the jury Lentsch's testimony was indeed substantially consistent with what he wrote in his report and statement. *See State v. Cornell,* 266 N.W.2d 15, 20 (Iowa), *cert. denied,* 439 U.S. 947, 99 S.Ct. 340, 58 L.Ed.2d 338 (1978); *State v. Coppola,* 502 A.2d 802, 805 (R.I.1985). When a statement is offered non-substantively to corroborate a party's trial testimony, and the party is available for cross-examination, the trial court does not commit prejudicial error in admitting the statements. *State v. Arndt,* 285 N.W.2d 478, 481 (Minn.1979); *State v. Blohm,* 281 N.W.2d 651, 652 (Minn.1979); *State v. Hesse,* 281 N.W.2d 491, 492 (Minn.1979). *See also United States v. Molinares Charris,* 822 F.2d 1213, 1221–22 (1st Cir.1987), *cert. denied,* 493 U.S. 890, 110 S.Ct. 233, 107 L.Ed.2d 185 (1989); *Wright–Barker,* 784 F.2d at 173–74 (no reversible error where matter contained in report was cumulative of other evidence and author was cross-examined); *State v. Rutchik,* 116 Wis.2d 61, 341 N.W.2d 639, 648 (1984); *People v. Johnson,* 100 Mich. App. 594, 300 N.W.2d 332, 335 (1981). Had Beynon requested a limiting instruction, he

---

**9.** SDCL 19–16–12 (Fed.R.Evid. 803(8)) provides an exception to the hearsay exclusionary rule for public records and reports:

Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth

. . . . .

(2) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel[.]

The qualification in Rule 803(8)(B) (which is identical to SDCL 19–16–12(2)) was made in order to insure that the exception would not be

used by prosecutors in order to prove their case in chief by means of a report rather than by bringing in the officer to testify. *United States v. Enterline,* 894 F.2d 287, 290 (8th Cir.1990); *United States v. King,* 613 F.2d 670, 673 (7th Cir.1980) (citing 99 Cong.Rec. H564 (Feb. 6, 1974)); *United States v. Oates,* 560 F.2d 45, 71 (2d Cir.1977). Since Officer Lentsch was present in court and subject to cross-examination, nothing in our disposition of this case denigrates that rationale. *See United States v. Hayes,* 861 F.2d 1225, 1230 (10th Cir.1988); *United States v. Wright–Barker,* 784 F.2d 161, 173 (3rd Cir.1986); *King,* 613 F.2d at 673.

would have been entitled to one, *Blohm,* 281 N.W.2d at 652; J. Larson, *supra,* § 106.1, at 50, but he did not. We conclude the trial court did not abuse its discretion in admitting the reports.

### III.

 In his third contention, Beynon argues the trial court erred in denying his motion for a new trial based upon "newly discovered evidence."[10] The essence of Beynon's new trial motion was that "new evidence" had come to light which supported Beynon's position that Officer Lentsch had a vendetta against Beynon, and seized upon the May third confrontation to that end. This "new evidence" consisted of an affidavit filed by Beynon's former wife who had moved to the state of Washington and could not be located prior to trial. The affidavit stated that, in response to her refusal to prosecute Beynon for violating a restraining order, Lentsch made statements to the effect that "he would get Rocky [Beynon]." This statement was made at least two years prior to the assault.

We initially note the decision whether to grant a new trial is within the sound discretion of the trial court, "whose superior knowledge of all the facts and circumstances of the case enables him to know the requirements of justice." *State v. Collier,* 381 N.W.2d 269, 272 (S.D.1986). *Accord State v. Willis,* 396 N.W.2d 152, 153 (S.D.1986); *State v. Dupris,* 373 N.W.2d 446, 448 (S.D.1985); *State v. Swallow,* 350 N.W.2d 606, 611 (S.D.1984). The "new evidence" Beynon bases his new trial request on is useful solely to impeach or discredit Lentsch's testimony. We have repeatedly held when newly discovered evidence would merely impeach or discredit a trial witness, a new trial is not warranted. *Willis,* 396

N.W.2d at 154; *State v. Kaseman,* 273 N.W.2d 716, 729 (S.D.1978); *State v. Furlow,* 87 S.D. 634, 638, 213 N.W.2d 705, 707 (1973).

In addition, the "new evidence" was cumulative in that Beynon's father testified Lentsch told him "he [Lentsch] could get Rocky [Beynon] anytime he wanted." This statement was also made at least two years prior to the assault. Another witness also testified that she heard Lentsch make a similar comment shortly *after* the assault. In determining whether a new trial should be granted, the trial court is required to find the new evidence is not cumulative and there is a "reasonable probability" that it would produce a different result on retrial. *Willis,* 396 N.W.2d at 153–54. Since the newly discovered evidence was merely cumulative, the trial court did not abuse its discretion in denying Beynon's Motion for a new trial. *See Willis,* 396 N.W.2d at 153–54.[11]

### IV.

 In his fourth contention, Beynon asserts the evidence introduced at trial was insufficient to sustain the jury's guilty verdict because the only witness who testified definitively that Beynon actually struck Lentsch was the officer himself. Beynon's mother-in-law testified that Beynon denied striking the officer. Beynon did not testify.

In determining the sufficiency of evidence on appeal, this Court on numerous occasions has stated that the proper inquiry is:

[W]hether there is evidence in the record, which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt (citations omitted). In making this determination, the Court

---

**10.** SDCL 15–6–59(a)(4) (1984) provides:
> A new trial may be granted ... for any of the following causes:
> (4) Newly discovered evidence, material to the party making the application, which he could not with reasonable diligence have discovered and produced at the trial; ....

**11.** Beynon also moved for a new trial based upon the fact that the Department of Criminal

Investigation initiated an investigation of Officer Lentsch because of a complaint of police brutality filed by Beynon's current wife in regard to the May third incident. Beynon does not disclose how evidence of the unconcluded investigation would be relevant to the aggravated assault charge. The trial court did not believe it was relevant. Nor do we.

will accept the evidence, and the most favorable inferences fairly drawn therefrom, which will support the verdict. *State v. Basker,* 468 N.W.2d 413, 417 (S.D. 1991); *State v. Miller,* 429 N.W.2d 26, 38 (S.D.1988). *Accord State v. Dickey,* 459 N.W.2d 445, 449–50 (S.D.1990). "Further, the jury is charged to be the exclusive judge of the credibility of the witnesses and the weight of the evidence." *State v. Caylor,* 434 N.W.2d 582, 583 (S.D.1989); *State v. Huber,* 356 N.W.2d 468 (S.D.1984).

The evidence presented at trial consisted of much more than Lentsch's word against Beynon's. It included physical evidence of the assault—photographs of Lentsch's injuries—and the testimony of two eyewitnesses who, although they did not see the actual blows, saw Beynon charge Lentsch's patrol car, saw Beynon grab Lentsch trying to remove him from the patrol car, saw Beynon grab Lentsch's flashlight, and later saw the two scuffling on the ground. This evidence corroborated Officer Lentsch's testimony. We conclude, there was sufficient evidence to support the jury's finding of guilt.

### V.

In his fifth contention, Beynon asserts he was deprived of his right to effective assistance of counsel as guaranteed by the sixth amendment of the United States Constitution and article VI, section 7 of the South Dakota Constitution. Shortly after Beynon was convicted, he independently moved the court to permit attorney Foley to withdraw. This motion was granted and new counsel, Beynon's counsel on appeal, was appointed. We have previously held:

> Ineffective assistance claims will be allowed on direct appeal only when the representation was 'so casual that the trial record evidences a manifest usurpation of appellant's constitutional rights.' *State v. Wurtz,* 436 N.W.2d 839 (S.D. 1989); *State v. Aliberti,* 401 N.W.2d 729 (S.D.1987); *State v. Hammond,* 357

N.W.2d 278, 279 (S.D.1984).[12] We have consistently expressed that we prefer to consider claims of ineffective assistance of counsel in habeas corpus proceedings because the attorney accused of incompetence has the opportunity to explain his actions. *Aliberti,* 401 N.W.2d at 732. Moreover, it is only through habeas corpus that a sufficient record can be made to allow the appropriate review. *State v. Schulz,* 409 N.W.2d 655, 660 (S.D.1987). *State v. Jett,* 474 N.W.2d 741, 743 (S.D. 1991) (footnote omitted).

Beynon contends Foley committed "plain error" in advising Beynon not to testify and in not vigorously attacking Lentsch as to motive. Had Beynon testified, however, the State would have been permitted to impeach his credibility by presenting evidence of three prior felony convictions. In addition, trial counsel attempted to attack Officer Lentsch's credibility through Beynon's father's testimony and the testimony of two other witnesses. It is not our function to second-guess tactical decisions of trial counsel, and we will not attempt to substitute our own theoretical judgment for that of defense counsel. *State v. Anderson,* 387 N.W.2d 544, 546 (S.D.1986); *State v. Dornbusch,* 384 N.W.2d 682, 686–87 (S.D.1986). Reviewing the entire record, attorney Foley's representation was not "'so casual' as to 'evidence a manifest usurpation' of [Beynon's] constitutional rights thereby triggering the 'plain error' rule." *Jett,* 474 N.W.2d at 743. *Accord State v. White Mountain,* 477 N.W.2d 36, 39 (S.D.1991).

The judgment of conviction is affirmed.

MILLER, C.J., and HENDERSON and AMUNDSON, JJ., concur.

SABERS, J., concurs in part and concurs in result in part III and V.

SABERS, Justice (concurring in part and concurring in result in part III and V).

I concur in result on Issue III on the basis that Defendant has not shown that

---

**12.** In other words trial counsel's actions must amount to "plain error." *Hammond,* 357 N.W.2d at 279.

**908**

the testimony was "unavailable" at the time of trial or that it was "new." Defendant testified at the hearing for new trial that the witness had warned him *two years* earlier. Although pre-trial attempts were made to contact the witness by leaving messages, no subpoena was issued and no continuance was requested. The trial court correctly ruled that "unavailability" of the evidence was not shown. Therefore, this evidence was not "newly discovered" and did not warrant a new trial under SDCL 15–6–59(a)(4).

Separately, I would not consider Defendant's claim of ineffective assistance of counsel (Issue V) on direct appeal because the preferred method is habeas corpus. *State v. Aliberti*, 401 N.W.2d at 732. Nor would I consider it under the plain error doctrine under these circumstances because no opportunity was provided to defense counsel to explain his actions. *Id.* The plain error doctrine was never intended to be used as an afterthought for insubstantial claims of ineffective assistance of counsel. *See* SDCL 23A–44–15. It was intended to be used for serious claims affecting substantial rights discovered during the appellate process. *State v. Dornbusch*, 384 N.W.2d 682, 686 (S.D.1986).