1999 SD 68

**David Ray BRADLEY, Petitioner and Appellant,**

v.

**Doug WEBER, Warden, South Dakota State Penitentiary, Appellee.**

No. 20555.

Supreme Court of South Dakota.

Considered on Briefs March 25, 1999.

Decided June 9, 1999.

Timothy M. Gebhart of Daveport, Evans, Hurwitz, and Smith, Sioux Falls, for petitioner and appellant.

Mark Barnett, Attorney General, Frank Geaghan, Assistant Attorney General, Pierre, for appellee.

GILBERTSON, Justice.

[¶ 1.] David Ray Bradley (Bradley) filed an amended application for writ of habeas corpus. The habeas court, Second Judicial Circuit, Minnehaha County, denied the writ and quashed it in its entirety. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] The following facts were taken from *State v. Bradley*, 431 N.W.2d 317 (S.D.1988) (*Bradley I*). On September 4, 1986, at approximately 6:00 p.m., two men gathering mushrooms in a roadside ditch near Renner, South Dakota, discovered a badly decomposed human corpse. The head of the body had been severed and lay a few feet away. An identification card found in a pocket of a pair of discarded jeans, which lay nearby, indicated the body might be that of a twenty-two-year-old Indian woman named Jamie Thunder Hawk (Thunder Hawk). Dental records confirmed this fact. Thunder Hawk's body was too badly decomposed for the coroner to determine a cause of death. However, the autopsy report indicated that decapitation, which apparently was carried out by sawing with a large knife, had been inflicted post-mortem. The coroner could not establish an exact time of death. The coroner estimated Thunder Hawk had been killed approximately two or three weeks before her body was found.

[¶ 3.] Once Thunder Hawk had been identified, police interviewed many of her friends and acquaintances. Officers decided to begin interviews with Bradley, who was Thunder Hawk's former boyfriend. He was taken to the Minnehaha County Sheriff's Department and placed in an interview room. He was interviewed by Chief Deputy Dan Elston (Elston). Parts of the interview were videotaped. He was not given the *Miranda* warning. In the interview he did not confess to the murder. However, he did provide detailed information as to the violent nature of his relationship with Thunder Hawk.

[¶ 4.] Eventually Bradley and two men, Vernon Lillegaard (Lillegaard) and Darryl Davids (Davids), with whom Bradley had shared an apartment during early August 1986, were arrested. On September 5, 1986, Davids, while being booked on a charge of being an accessory to Thunder Hawk's murder, asked to talk to a deputy. He subsequently told police that he had

witnessed the murder and he, Lillegaard and Bradley had driven to the place where Thunder Hawk was found. Bradley had cut off Thunder Hawk's head, hit her head with a tire iron and dumped her body in the ditch, Davids said. According to his story, the actual murder took place the previous night, after Bradley and Thunder Hawk had quarreled over an incident involving a pair of shoes, which Bradley had allegedly taken from Thunder Hawk. In reference to robbery charges against Bradley stemming from that incident, Davids told police Bradley said to Thunder Hawk: "If you think I'm going to go to prison for ten to fifteen years over a seven dollar pair of shoes, you're crazier than heck." Lillegaard, after initially denying any knowledge of Thunder Hawk's murder and the later decapitation, confirmed Davids' story to the police.

[¶ 5.] Davids, at trial, testified that he had never seen the murder or the body and that he told police only what they wanted to hear. Lillegaard, however, testified fully, stating that Bradley, angered over the robbery incident, apparently pushed Thunder Hawk so that she had fallen backwards and been knocked unconscious against a stair step. There was evidence that Bradley stood over Thunder Hawk and kicked her in the ribs with his cowboy boots. Lillegaard said he held the door open while Bradley carried Thunder Hawk inside the apartment. Bradley then undressed Thunder Hawk and commenced having sexual intercourse with her. Thunder Hawk, then revived, struggled and screamed "Get off me, you son-of-a-bitch." Bradley stated, "I ought to punch your head off." Thereupon, Bradley strangled her to death while Lillegaard passively watched. Davids, according to Lillegaard, had been outside drinking coffee, and did not become involved until Thunder Hawk was already dead. Bradley carried the corpse to Davids' car and placed it in the trunk.

[¶ 6.] The next day on a trip to Baltic, South Dakota, the three stopped to urinate at "ditch road." Bradley took Thunder Hawk's body out of the trunk and proceeded to "saw her head off" with an 18-inch serrated-edge knife. Both Lillegaard and Davids became sick and vomited. Bradley laughed stating "this is one dirty, stinking, f Indian that won't bother me anymore." After beating it with a tire iron, Bradley threw Thunder Hawk's head in the ditch and disposed of her body. He threatened Lillegaard and Davids that if they told anyone, the same thing would happen to them.

[¶ 7.] Bradley admitted the violence between the couple when he was interviewed on September 6, 1986. Statements he made at the interview confirmed the testimony of other witness' as he admitted beating Thunder Hawk and chopping off her hair with a butcher knife. Portions of the interview tape were played to the jury.

[¶ 8.] David Palmer (Palmer) was Bradley's court appointed attorney from the time he was assigned the case on December 19, 1986 until after sentencing. Prior to Palmer's appointment, Michael Pieplow[1] represented Bradley. The jury found Bradley guilty of premeditated murder. The appeal *Bradley I* followed.

[¶ 9.] On direct appeal Bradley alleged the trial court erred in four regards:

(1) The trial court erroneously ruled as a matter of law that a State witness was not an accomplice;

(2) Evidence concerning prior bad acts was inadmissible;

(3) Hearsay testimony that the victim was afraid of the defendant was improperly admitted; and

(4) The trial court's refusal to admit testimony concerning a traffic count at the site where the victim was found was an abuse of discretion.

[¶ 10.] We held the trial court was correct on Issues 1 and 2, correct for the wrong reason on Issue 3 and its decision

---

1. Pieplow was apparently forced to withdraw because of health reasons.

on Issue 4 was not an abuse of discretion. Finding no error, we affirmed the conviction.

[¶ 11.] Bradley filed for a writ of habeas corpus. Bradley testified on his behalf and called Deputy Elston as a witness. Bradley claimed statements he made during the course of the interview with law enforcement officers on September 6, 1986 were involuntary and extracted in violation of his privilege against self-incrimination. He further claimed statements he made during the course of this interview were extracted from him in violation of his right to counsel. He also claimed the statements were made during a period of custodial interrogation and before he was advised of or waived his constitutional rights under *Miranda.* Bradley also claimed Palmer did not provide effective counsel. His writ was denied. He appeals the denial raising the following issues:

1. Whether the habeas court erred in ruling that statements made by Bradley to law enforcement officers on or about September 6, 1986, were not made during a custodial interrogation, entitling Bradley to being advised of his *Miranda* rights.

2. Whether the habeas court erred in ruling that Bradley's trial counsel was not ineffective.

   a. Failure to seek suppression of the statements made by Bradley to law enforcement.

   b. Actions of Bradley's trial counsel in plea-bargain negotiations.

3. Whether the habeas court erred in ruling that the totality of the errors occurring at Bradley's criminal trial did not deprive him of a fair trial.

## STANDARD OF REVIEW

[¶ 12.] In reviewing applications for writs of habeas corpus, we are guided by a well-established standard of review:

Since the remedy is in the nature of a collateral attack upon a final judgment, the scope of review in habeas corpus proceedings is limited. Habeas corpus can be used only to review (1) whether the court has jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases whether an incarcerated defendant has been deprived of basic constitutional rights. Habeas corpus is not a remedy to correct irregular procedures, rather, habeas corpus reaches only jurisdictional error. For purposes of habeas corpus, constitutional violations in a criminal case deprive the trial court of jurisdiction. Further, we may not upset the habeas court's findings unless they are clearly erroneous.

*Flute v. Class,* 1997 SD 10, ¶ 8, 559 N.W.2d 554, 556 (citing *Weiker v. Solem,* 515 N.W.2d 827, 830 (S.D.1994) (quotations and citations omitted)).

Whether a defendant has received ineffective assistance of counsel presents a mixed question of law and fact. *Lykken v. Class,* 1997 SD 29, 561 N.W.2d 302. In the absence of a clearly erroneous determination, we defer to the habeas court's findings of fact regarding what counsel did or did not do, but we may substitute our own judgment "as to whether defense counsel's actions or inactions constituted ineffective assistance of counsel." *Lykken,* 1997 SD 29 at ¶ 6, 561 N.W.2d at 304–05 (quoting *Aliberti v. Solem,* 428 N.W.2d 638, 640 (S.D. 1988)).

Lien v. Class, 1998 SD 7, ¶ 12, 574 N.W.2d 601, 607.

## ANALYSIS AND DECISION

[¶ 13.] **1. Whether the habeas court erred in ruling that statements made by Bradley to law enforcement officers on or about September 6, 1986, were not made during a custodial interrogation, entitling Bradley to being advised of his *Mi-***

*randa* rights.[2]

[¶ 14.] Bradley claims when he was questioned on September 6, 1986, at the Minnehaha County Sheriff's Department, he was not given the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He claims the interrogation was custodial and hence, he was "entitled to *Miranda* warnings." The habeas court found, based on the totality of the circumstances, Bradley was not in custody at the time of the interview and therefore he was not entitled to *Miranda* warnings. We agree.

[¶ 15.] We have said, *Miranda* warnings are required when "a defendant is interrogated while in police custody." *State v. Thompson,* 1997 SD 15, ¶ 23, 560 N.W.2d 535, 540 (citing *Thompson v. Keohane,* 516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995)). The test we use in determining whether *Miranda* warnings are required is "whether the person being questioned is in custody or deprived of his or her freedom to leave." *Thompson,* 1997 SD 15 at ¶ 24, 560 N.W.2d at 540 (citing *State v. Darby,* 1996 SD 127, ¶ 25, 556 N.W.2d 311, 318-9).

[¶ 16.] Our review of the circumstances surrounding Bradley's questioning on September 6th indicates he was not in custody or deprived of his freedom as to necessitate a *Miranda* warning. The facts indicate that Bradley willingly came to the Sheriff's office. Our review of the videotape shows he was sober and attentive during the interview. The responsive and articulate answers he gave to Elston's questions show Bradley to be a person of average intelligence or better.[3] He did not give any statements that would have incriminated him in the murder of Thunder Hawk. He did, however, admit to several fights with Thunder Hawk and cutting off her hair. He was allowed to smoke, leave to go to the restroom and get a soda. He was told he could leave at any time. When he asked to leave the officers let him go. At no time was he told that he was under suspicion, under arrest or in custody. He and Officer Elston even debated who might have killed Thunder Hawk. The entire interview was conversational and relaxed. As such, the habeas court did not err in finding there was no requirement for the *Miranda* warning. We affirm.

[¶ 17.] **2. Whether the habeas court erred in ruling that Bradley's trial counsel was not ineffective.**

[¶ 18.] To establish ineffective assistance of counsel the party must prove deficient representation and that such deficiency was prejudicial to him. *Siers v. Class,* 1998 SD 77, ¶ 12, 581 N.W.2d 491, 495. South Dakota has adopted the *Strickland* test to determine "whether a defendant received effective assistance of counsel as guaranteed by article VI, § 7 of the South Dakota Constitution." *Lien,* 1998 SD 7 at ¶ 14, 574 N.W.2d at 607 (citing *Luna v. Solem,* 411 N.W.2d 656, 658 (S.D.1987); *Woods v. Solem,* 405 N.W.2d 59, 61 (S.D.1987)).

To establish ineffective assistance of counsel, a defendant must prove (1) that counsel's representation fell below an objective standard of reasonableness and (2) that such deficiency prejudiced him. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hopfinger v. Leapley,* 511 N.W.2d 845 (S.D.1994). Relying on *Strickland, Woods v. Solem,* 405 N.W.2d 59, 61 (S.D.1987), held that prejudice

---

2. Miranda issues are generally reviewed by this Court on direct appeal. As noted above, this Court's habeas jurisdiction is limited. However, here the State did not contest whether this issue was appropriate for habeas review. Rather it addressed the issue directly on the merits. Thus, we leave the issue of whether and if so, to what extent, Miranda issues are appropriate for habeas review to another day when it is properly before us and fully briefed. *Cf. Loop v. Class,* 1996 SD 107, ¶ 24, 554 N.W.2d 189, 193.

3. At one point in the interview, Bradley volunteered to take a polygraph test if done in the presence of his attorney who was representing him on an unrelated criminal matter.

exists when there is a reasonable probability that, but for counsel's unprofessional errors, the proceeding would have been different. It is not enough for the petitioner to show that the verdict would have been different, he must show 'that the counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Hopfinger,* 511 N.W.2d at 847.

*Siers,* 1998 SD 77 at ¶ 12, 581 N.W.2d at 495.

[¶ 19.] Moreover, the standard of review is highly deferential. *Id.* "[T]here is a strong presumption that counsel's performance falls within the wide range of professional assistance and the reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Id.* In order to prevail, Bradley must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.*

[¶ 20.] Bradley asserts in his second ground for habeas relief that trial counsel's performance was ineffective based upon two purported deficiencies. Each alleged deficiency will be discussed below.

[¶ 21.] ***a. Failure to seek suppression of the statements made by Bradley to law enforcement.***

[¶ 22.] Attorney Palmer did file a suppression motion for the videotaped statements. However, he later withdrew the motion as he could not find a factual basis to justify the motion. Bradley now claims the withdrawal of the suppression motion was ineffective assistance of counsel. As we found in issue one, there is no factual or legal basis for going forward with this motion. Bradley's argument is without merit.

[¶ 23.] ***b. Actions of Bradley's trial counsel in plea-bargain negotiations.***

[¶ 24.] At the habeas hearing Bradley raised another issue not contained in any of his pleadings. He claimed Palmer was ineffective for allegedly talking Bradley out of accepting a plea-bargain.

[¶ 25.] Palmer testified at the habeas hearing that prior to jury selection at Bradley's trial he discussed a plea-bargain with the prosecutor. He said he received an offer of 50 or 60 years but he could not remember if it was a cap or a recommendation. Palmer testified he then advised Bradley of the offer and told him it was his decision. Palmer communicated all of Bradley's options and informed him the decision to accept the plea was his decision, alone. Palmer also told Bradley he thought that his case was defendable. Bradley did not accept the plea-bargain.

[¶ 26.] Again, to establish ineffective assistance of counsel, Bradley must prove (1) that Palmer's representation, in allegedly talking Bradley out of the plea bargain, fell below an objective standard of reasonableness and (2) that such deficiency prejudiced Bradley. (citing *Siers,* 1998 SD 77 at ¶ 12, 581 N.W.2d at 495; *Strickland,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Hopfinger,* 511 N.W.2d 845).

[¶ 27.] Palmer did not talk Bradley out of accepting the plea offer, he only presented him with his options. Bradley ultimately made the decision to proceed to trial based on Palmer's advice that the case was defendable based on credibility problems with the witness' and the state's other evidence. It was clearly a matter of strategy to proceed with the trial.

[¶ 28.] Here there is no information in the record Bradley would have acknowledged his guilt prior to trial or that he would have plead guilty. He offered no proof of his desire to take the plea-bargain. He has maintained his innocence since the trial. Bradley has neither shown that Palmer's representation fell below an objective standard of reasonableness nor overcome the presumption that Palmer's acts were trial strategy. There is no need

for us to visit the second prong of the *Strickland* test. We affirm.

**[¶ 29.] 3. Whether the habeas court erred in ruling that the totality of the errors occurring at Bradley's criminal trial did not deprive him of a fair trial.**

 [¶ 30.] Bradley claims that prior bad acts evidence, testimony of Thunder Hawk's fear of Bradley, the videotape and all of the other alleged errors taken as a whole deprived him of a fair trial. We have held, "a defendant is not guaranteed a perfect trial, but every accused, innocent or guilty, is entitled to a fair trial." *State v. Pellegrino*, 1998 SD 39, ¶ 25, 577 N.W.2d 590, 600. The bad acts and fear testimony were upheld in *Bradley I*, therefore, no error exists. The issue with the videotape interview is also without merit as detailed in Issue I. As there are no errors in this case which to cumulatively view, we affirm.

[¶ 31.] MILLER, Chief Justice, and AMUNDSON and KONENKAMP, Justices, concur.

[¶ 32.] SABERS, Justice, concurs in result.

SABERS, Justice (concurring in result).

[¶ 33.] I concur in result only.

[¶ 34.] The withdrawal of the motion to suppress the videotaped statements was a mistake. "Defendant had nothing to gain and everything to lose by withdrawing the motion." *Luna v. Solem*, 411 N.W.2d 656, 662 (S.D.1987) (Sabers, J., concurring in part and concurring in result in part). If Bradley was subjected to custodial interrogation without receiving Miranda warnings, then the statements would be suppressed. Counsel should have pursued the motion to suppress and required the State to prove beyond a reasonable doubt that the incriminating statements were made freely and voluntarily. Counsel's withdrawal of the motion to suppress constitutes deficient performance.