2002 SD 59

**Carl HAYS, Petitioner and Appellant,**

v.

**Douglas WEBER, Warden of the South Dakota State Penitentiary, Respondent and Appellee.**

**No. 21973.**

Supreme Court of South Dakota.

Argued Feb. 12, 2002.

Decided May 15, 2002.

* * *

Phillip O. Peterson, Clay County Public Defender, Beresford, South Dakota, Attorney for petitioner and appellant.

Mark Barnett, Attorney General, Gary Campbell, Assistant Attorney General, Pierre, South Dakota, Attorneys for respondent and appellee.

GILBERTSON, Chief Justice.

[¶ 1.] Carl Hays (Hays) appeals the denial of habeas corpus relief based on ineffective assistance of counsel. The habeas court held that counsel's performance was not so deficient as to constitute ineffective assistance of counsel. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] On May 27, 1996, CJ's Corner Bar, owned by Hays and his father, was destroyed by fire.[1] Because there were indications that the fire was not accidental, law enforcement and fire investigators were called in. Eventually, Hays and his employee, Joseph Barr, were arrested for starting the fire. At trial, investigators testified that the fire had been deliberately started in a trashcan placed next to the coolers.

[¶ 3.] Hays had recruited Barr and Scott Sere,[2] the bar's manager, to help commit the arson. Barr testified that Hays wanted him to burn down the bar so

---

1. The bar was also known as the Seven Mile Station and the Riverside Station.

2. Hays had first asked Sere to start the fire. When Sere refused, Hays recruited Barr, an employee from Hays' canopy business.

that Hays could collect the $45,000 in insurance money. But, first, the three men removed forty cases of beer and replaced a large screen television with a smaller one. Hays also prepared an inventory in anticipation of submitting it to the insurance company for reimbursement after the fire. As a result of Barr's and Sere's testimony, as well as other evidence presented at trial, Hays was convicted on December 22, 1997, of Aiding, Abetting or Advising Third Degree Burglary; Aiding, Abetting or Advising Arson; and Conspiracy to Commit Arson.[3]

[¶ 4.] Defense counsel was initially Sid Strange, but he later filed a motion to withdraw as counsel because Hays refused to communicate with him. During Strange's representation, however, difficulties arose regarding Strange's trial calendar. At Hays' arraignment on December 27, 1996, Strange brought this problem to the court's attention stating:

> I should advise the court, I will probably be in trial in one circuit or another until mid-May, starting January 6 until probably the middle of May, on other matters. I've spoken with Mr. Hays about that and he has indicated a willingness to waive a part or all of the 180 days if that ever becomes a problem. If you want to take his waiver today.

The court, however, did not formally address the offer of waiver and left the matter of scheduling up to the attorneys.

[¶ 5.] Richard Johnson appeared on behalf of Strange and his law firm to request that new counsel be appointed. The State agreed to the request on the condition that the 180–day period be tolled while Hays completed the application for new court-appointed counsel. On March 20, 1997, Hays filed that application and the court

designated Gary Sokolow to represent him. The next day, Sokolow made a motion for continuance and the 180–day rule was again discussed. The court, as before, was concerned with the lapse of time in light of the 180–day rule. Sokolow informed the court that his client was prepared to stipulate, along with Barr and his attorney, that the 180–day rule was "not an issue."

[¶ 6.] On October 10, 1997, Sokolow filed ten motions on behalf of Hays. One motion requested a bill of particulars specifying the acts committed. Another moved for dismissal of Count I on the grounds that it was a legal and factual impossibility for a person to burglarize property in which he has a possessory interest. The former was withdrawn after fourteen days and the latter was denied after extensive argument.

[¶ 7.] Next, the State moved to join the trials of Hays and Barr. A hearing was conducted on November 16, 1997, and the motion was granted on November 24, 1997. The matter was, however, abandoned when Barr subsequently entered into a plea agreement to testify against Hays. Sokolow filed more pretrial motions, including a motion to interview State witnesses and a motion to allow impeachment with prior convictions as to Sere and Ronald Anderson. No motion was filed to allow impeachment of Barr. The hearing on these motions was held December 9, 1997.

[¶ 8.] Before jury selection, both parties accepted the court's preliminary jury instructions. Notably, the instructions did not include anything specifically dealing with accomplice testimony, even though the State had offered the standard instruction for that issue. The jury instructions

---

**3.** For a more detailed recitation of the facts underlying Hays' conviction, *see State v. Hays,* 1999 SD 89, 598 N.W.2d 200.

did, however, include language regarding the jury's power to weigh the credibility of the witnesses in light of their demeanor, reasonableness, memory, interest, bias or prejudice.

[¶ 9.] At the conclusion of the trial, Hays was found guilty on all three counts. He later pleaded guilty to being a habitual offender. Hays was given three concurrent sentences of ten years each, to be served consecutively with the sentence he was serving on unrelated charges in a different county.

[¶ 10.] Hays, then represented by James McCulloch, filed a direct appeal to this Court. Hays' conviction was affirmed in *Hays*, 1999 SD 89, 598 N.W.2d 200. On July 25, 2000, Hays filed a petition for habeas corpus relief, alleging ineffective assistance of counsel. After an evidentiary hearing on January 18, 2001, the court filed a memorandum opinion denying habeas relief. Hays now appeals, raising the following issues:

1. Whether Hays is entitled to habeas relief for ineffective assistance of counsel because defense counsel failed to move for dismissal on the basis that the 180–day rule was violated.

2. Whether Hays is entitled to habeas relief for ineffective assistance of counsel because defense counsel did not make motions regarding the State's alleged failure to plead or prove overt acts in furtherance of the conspiracy.

3. Whether Hays is entitled to habeas relief for ineffective assistance of counsel because defense counsel failed to propose an accomplice jury instruction.

4. Whether Hays is entitled to habeas relief for ineffective assistance of counsel because defense counsel failed to cross-examine a key State witness.

5. Whether Hays is entitled to habeas relief for ineffective assistance of counsel because defense counsel failed to object to Hays' testimony, regarding a prior attorney's legal advice, elicited on cross-examination.

## STANDARD OF REVIEW

[¶ 11.] Because a habeas claim is a collateral attack on a final judgment, our review is somewhat limited. *New v. Weber*, 1999 SD 125, ¶ 5, 600 N.W.2d 568, 571 (citing *Lien v. Class,* 1998 SD 7, ¶ 10, 574 N.W.2d 601, 606) (other citation omitted). Review of a habeas claim is not a substitute for direct review. *Id.* (citing *Loop v. Class*, 1996 SD 107, ¶ 11, 554 N.W.2d 189, 191) (other citation omitted). The standard in such cases is well settled:

Habeas corpus can be used only to review[:] (1) whether the court has jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases whether an incarcerated defendant has been deprived of basic constitutional rights. Habeas corpus is not a remedy to correct irregular procedures, rather, habeas corpus reaches only jurisdictional error. For purposes of habeas corpus, constitutional violations in a criminal case deprive the trial court of jurisdiction. Further, we may not upset the habeas court's findings unless they are clearly erroneous.

*Bradley v. Weber*, 1999 SD 68, ¶ 12, 595 N.W.2d 615, 619 (quoting *Flute v. Class*, 1997 SD 10, ¶ 8, 559 N.W.2d 554, 556 (other citations omitted)). The habeas applicant has the initial burden of proving entitlement to relief by a preponderance of the evidence. *New*, 1999 SD 125 at ¶ 5, 600 N.W.2d at 572 (citing *Lien*, 1998 SD 7 at ¶ 11, 574 N.W.2d at 607). We may

affirm the ruling of the habeas court if it is "right for any reason." *Id.* (citing *Satter v. Solem,* 458 N.W.2d 762, 768 (S.D.1990)) (additional citation omitted).

[¶ 12.] This Court's standard for reviewing claims of ineffective assistance of counsel is also well settled.

> Whether a defendant has received ineffective assistance of counsel is essentially a mixed question of law and fact. In the absence of a clearly erroneous determination by the circuit court, we must defer to its findings on such primary facts regarding what defense counsel did or did not do in preparation for trial and in his presentation of the defense at trial. This [C]ourt, however, may substitute its own judgment for that of the circuit court as to whether defense counsel's actions or inactions constituted ineffective assistance of counsel.

*Rodriguez v. Weber,* 2000 SD 128, ¶ 28, 617 N.W.2d 132, 142 (citations omitted).

## ANALYSIS AND DECISION

[¶ 13.] In reviewing an ineffective assistance of counsel claim, this Court has stated:

> The Sixth Amendment "right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674, 692 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Id.,* 466 U.S. at 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 692–93.

*Rhines v. Weber,* 2000 SD 19, ¶ 12, 608 N.W.2d 303, 307. Thus, this Court has adopted the two-part test set forth in *Strickland. See Sund v. Weber,* 1998 SD

123, ¶ 13, 588 N.W.2d 223, 225; *Jones v. State,* 353 N.W.2d 781, 784 (S.D.1984).

[¶ 14.] In order to prevail on an ineffective assistance of counsel claim, Hays must show: "1) that counsel's performance was deficient; and 2) that the deficient performance prejudiced the defense. The test for prejudice is whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Boykin v. Leapley,* 471 N.W.2d 165, 167 (S.D.1991) (citation omitted). Furthermore, counsel is presumed competent, and that presumption must be overcome by applying the *Strickland* test. *Ramos v. Weber,* 2000 SD 111, ¶ 12, 616 N.W.2d 88, 92.

[¶ 15.] **Whether Hays is entitled to habeas relief for ineffective assistance of counsel when defense counsel failed to move for dismissal on the basis that the 180–day rule was violated.**

[¶ 16.] In order to determine whether counsel's inaction was deficient and prejudicial, it is first necessary to determine the likelihood that such a motion would have been successful. If the motion could have been denied, then there is no showing of prejudice.

> The "180–day rule" . . . is a rule of court, not a constitutional requirement, standing on separate legal footing than constitutional claims and requiring separate and distinct analysis. Violation of the "180–day rule" is not synonymous with violation of a constitutional right to a speedy trial.

*State v. Erickson,* 525 N.W.2d 703, 711 (S.D.1994) (internal citations omitted). While the statute provides that a violation of the rule "shall" result in a dismissal, so too, does it provide a multitude of excep-

tions and exclusions. For example, SDCL 23A–44–5.1 provides, in pertinent part:

(1) Every person indicted, informed or complained against for any offense shall be brought to trial within one hundred eighty days, and such time shall be computed as provided in this section. * * *

(4) The following periods *shall* be excluded in computing the time for trial:

(a) *The period of delay resulting from other proceedings concerning the defendant,* including but not limited to an examination and hearing on competency and the period during which he is incompetent to stand trial; *the time from filing until final disposition of pretrial motions of the defendant,* including motions brought under § 23A–8–3; motions for a change of venue; and the time consumed in the trial of other charges against the defendant;

(b) *The period of delay resulting from a continuance granted at the request or with the consent of the defendant or his counsel* provided it is approved by the court and a written order filed. A defendant without counsel shall not be deemed to have consented to a continuance unless he has been advised by the court of his right to a speedy trial and the effect of his consent;

(c) The period of delay resulting from a continuance granted by the court at the request of the prosecuting attorney if the continuance is granted because of the unavailability of evidence material to the state's case, when the prosecuting attorney has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will be available at the later date and provided a written order is filed;

(d) *The period of delay resulting from the absence or unavailability of the defendant;*

(e) A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and there is good cause for not granting a severance. In all other cases the defendant shall be granted a severance so that he may be tried within the time limits applicable to him; and

(f) *Other periods of delay not specifically enumerated herein, but only if the court finds that they are for good cause.* A motion for good cause need not be made within the one hundred eighty-day period.

(5) If a defendant is not brought to trial before the running of the time for trial, as extended by excluded periods, the defendant shall be entitled to a dismissal with prejudice of the offense charged and any other offense required by law to be joined with the offense charged.

(emphasis added). Excluding those periods that could be tolled due to actions by the defense, we conclude that Hays was tried within the required 180–day period.

[¶ 17.] A brief chronology of events is outlined as follows:

- December 27, 1996   Arraignment; Strange offers to waive 180–day rule
- February 28, 1997   Hearing on Strange's motion to withdraw
- March 20, 1997   Hays files application for new court-appointed counsel
- March 21, 1997   Sokolow moves for continuance and notifies court of stipulation to waive 180–day rule; State moves to join cases
- March 28, 1997   Joinder hearing
- October 10, 1997   Defense motions for bill of particulars, discovery and inspection, exclusion of character and reputation evidence, exclusion of testimony on pretrial matters, production of evidence favorable to

Defendant, to dismiss Count I of the indictment, to strike prior convictions, and for Defendant to appear in street clothes

- October 24, 1997 — Hearing on defense motions
- November 21, 1997 — State's motion for testimony re: factual basis for expert opinion
- November 24, 1997 — State's motion for other acts evidence, Admission of conviction of crime; order for joinder
- December 9, 1997 — Hearing on defense motions, continued
- December 5, 1997 — Defense motion to interview witness, to use prior convictions of Anderson and Sere
- December 22, 1997 — Jury Trial

Hays' first appearance was December 27, 1996. He was tried on December 22, 1997. The habeas court properly excluded from calculation those periods attributable to motions and continuances requested by the defense and came to the conclusion that Hays was tried within 195 days. But it failed to exclude those periods of delay attributable to Hays by reason of his participation in other proceedings and to his unavailability, as is required by SDCL 23A–44–5.1(4)(a) and SDCL 23A–44–5.1(4)(d).

[¶ 18.] Hays' first attorney moved to withdraw as counsel due to Hays' refusal to communicate with him from December 27 to February 28. Thus, at a minimum, Hays was unavailable for a period of 63 days. While the record shows that the trial court attributed this lack of activity to Hays and properly tolled the period from February 28 to March 20 while Hays applied for new court-appointed counsel, the prior period of unavailability was not tolled. In *State v. Webb*, this Court stated "[w]here, as here, the delay in proceedings is attributable to the defendant's unavailability, the 180–day limit is tolled." 539 N.W.2d 92, 96 (S.D.1995) (citing 23A–44–5.1(4)(d)) (additional citation omitted). The period of unavailability here is directly attributable to Hays and the statute requires that it be properly tolled. This matter, alone, negates Hays' claim that a motion for dismissal based upon SDCL 23A–44–5.1 would have been granted.[4]

[¶ 19.] Furthermore, Hays was simultaneously juggling three other proceedings while preparing for the trial at issue here. *See* SDCL 23A–44–5.1(4)(a). Hays insisted on testifying at trial, but stated that he did not want to say anything until his divorce became final, just two weeks before the trial started. Hays was also involved in a lawsuit over the video lottery machines that were destroyed in the fire. He was indicted on other criminal charges in Minnehaha County, for which he was later convicted in February of 1998. Thus, any delay between March 21, 1997, to December 8, 1997, resulting from these other proceedings should also have been properly tolled by the trial court. The delay resulting from Hays' involvement in these proceedings easily put the trial date within the 180–day limit.

[¶ 20.] Hays argues, however, that no time could have been tolled by the trial court without a motion for good cause having been filed by the State. This is incorrect. The statute provides that a motion for good cause need only be filed if the State wishes to toll a period for reasons not otherwise enumerated within the statute. SDCL 23A–44–5.1(4)(f). *See also State v. Shilvock–Havird*, 472 N.W.2d 773, 775 (S.D.1991) (holding state's failure to file motion to extend 180–day period did not require dismissal, as "motion-filing requirement is not absolute.").

---

4. Subtracting 63 days from the 195 days calculated by the habeas court leaves the time from first appearance to trial at 132 days, well within the 180–day period.

[¶ 21.] Finally, because the trial took place within the required statutory period, it is unnecessary to decide whether Hays waived the provisions of SDCL 23A–44–5.1. We will, however, discuss the issue for the purpose of clarification. Hays maintains that he did not waive his rights under this provision because the assertion did not come directly from his own mouth. We disagree. This Court has long understood that an attorney may waive the protection of SDCL 23A–44–5.1 on behalf of the client so long as it is done with the "concurrence of the defendant." *See State v. Bahm, Jr.*, 494 N.W.2d 177, 179 (S.D. 1992) (quoting *Shilvock–Havird*, 472 N.W.2d at 776 (additional citation omitted)).

[¶ 22.] Hays knowingly and voluntarily waived the protections of the 180–day rule.[5] *See State v. Stepner*, 1999 SD 40, ¶ 15, 590 N.W.2d 905, 908 (holding no formalities required to establish informed and voluntary waiver); *Beynon*, 484 N.W.2d at 902 (upholding waiver where defendant indicated he was "willing to let that ride beyond the 180 days" in order to get new court-appointed counsel). Hays' failure to communicate with his first attorney resulted in Mr. Strange's motion to withdraw. This, in turn, created the need for new counsel to be appointed. The court was concerned with the ninety days that had already passed when Sokolow, on March 21, 1997, immediately moved for a continuance. The court responded to Sokolow's motion by stating that, not only was the inaction from December 27 until February 12 attributable to Hays' failure to

communicate with his attorney, but the time lapse from February 12 until the matter of scheduling was appropriately settled would count against Hays as well, in calculating the 180 days. Sokolow then replied that he had discussed the issue with his client and was preparing a stipulation to that effect. *See State v. Martin*, 493 N.W.2d 223, 226 (S.D.1992) (holding failure to sign stipulation not enough to invalidate informed and voluntary waiver). The parties clearly understood that Hays was waiving the 180–day time limit and the issue was never discussed again. *See Stepner*, 1999 SD 40 at ¶¶ 15–16, 590 N.W.2d at 908–09. The record shows that both of Hays' trial attorneys, in Hays' presence, offered and intended to waive the 180–day rule. While Strange's initial offer of waiver may not have been effective,[6] Sokolow's later offer was.

[¶ 23.] Given the delay caused by Hays himself, as well as his informed and voluntary waiver, there is no indication that the trial court was required to grant a motion for dismissal. "This case reveals none of the prosecutorial abuse or ineffective scheduling practices the 180–day rule was intended to cure." *Webb*, 539 N.W.2d at 96. Hays should not be given the benefit of any postponement he caused. "[D]elay is a defendant's best lawyer; where a defendant assents to a period of delay and later attempts to take advantage of it, courts should be loathe to find a violation of an accused's speedy trial rights." *Beynon*, 484 N.W.2d at 903 (quoting *State v. Cross*, 468 N.W.2d 419, 420 (S.D.1991)) (other citation omitted). Where the record

---

5. The State bears the burden of proving any waiver was the product of a knowing and voluntary decision. *State v. Beynon*, 484 N.W.2d 898, 902 (citations omitted).

6. Subsequent actions indicate Strange's initial offer of waiver was not deemed effective by either party or the court because the time

limit continued to be an issue. But when Mr. Sokolow moved for a continuance, the court agreed only after Sokolow informed the court of the stipulation. Therefore, the court deemed the 180–day rule to still be in effect until the time of Sokolow's appearance on March 21.

600

does not show that the motion to dismiss would have been successful, there is no prejudice. Hays has failed to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Boykin,* 471 N.W.2d at 167. Therefore, Hays is not entitled to habeas relief for ineffective assistance of counsel.

### Conclusion

[¶ 24.] Hays' remaining claims of ineffectiveness are a meritless litany of excuses, many of which center upon his lack of candor with his own attorney. We deem them unworthy of discussion. While it may be true that there were instances where trial counsel's assistance fell below normal standards, Hays has failed to prove that any of those instances resulted in prejudice. Hays is only guaranteed a fair trial, not a perfect one. *Davi v. Class,* 2000 SD 30, ¶ 51, 609 N.W.2d 107, 118. Accordingly, we affirm the decision of the habeas court.

[¶ 25.] AMUNDSON and KONENKAMP, Justices, and GORS, Acting Justice, concur.

[¶ 26.] SABERS, Justice, dissents.

[¶ 27.] ZINTER, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.

SABERS, Justice (dissenting).

[¶ 28.] I dissent on Issue 1. This majority opinion puts the final nail in the coffin of the 180–day rule. It effectively guts the 180–day rule and makes it a rule to be ignored.

[¶ 29.] "SDCL 23A–44–5.1 creates statutory rights in addition to a defendant's constitutional right to a speedy trial." *State v. Hoffman,* 409 N.W.2d 373, 374 (S.D.1987). The 180–day rule "serves two

equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society[.]" *State v. Cross,* 468 N.W.2d 419, 420 (S.D.1991) (quoting *Commonwealth v. Brocklehurst,* 491 Pa. 151, 420 A.2d 385, 387 (1980)). The purpose of the rule "is to further the prosecution of cases in an effective manner and to afford defendants a right to have their case tried within a reasonable time." *Cross,* 468 N.W.2d at 422 (Henderson, J., concurring).

[¶ 30.] "Proof by the defendant that the 180 days has run establishes a prima facie case for dismissal. Absent a showing of good cause delay by the State, the case *must* be dismissed." *State v. Cooper,* 421 N.W.2d 67, 69 (S.D.1988) (emphasis in original). *See also State v. Hoffman,* 409 N.W.2d 373, 375 (S.D.1987) (holding that SDCL 23A–44–5.1 "requires a disposition of criminal matters within 180 days lacking good cause for delay"). The burden is on the State to show good cause. *Cooper,* 421 N.W.2d at 71 (citing *Hoffman,* 409 N.W.2d at 375).

[¶ 31.] Hays was arraigned on December 27, 1996, and tried on December 22, 1997. Since this is 5 days short of a year maybe we should change the name of the rule to the 365–day rule. The majority opinion's chronology clearly demonstrates that more than 180 days passed between Hays' initial appearance and the date of trial but excuses the delay as attributable to Hays. However, in reaching this conclusion, the majority opinion's liberal construction of the 180–day rule affords great deference to the State in calculating the periods to be tolled. The majority opinion even goes beyond what the trial court did and finds more time which it claims can be tolled and attributed to intentional delay by Hays. The result is inconsistent with the purpose of the 180–day rule, a speedy trial.

[¶ 32.] The 180–day rule was designed "to prevent delay, procrastinations, and dilatory practices." *State v. Hetzel,* 1999 SD 86, ¶ 19, 598 N.W.2d 867, 870 (Sabers, J., dissenting) (citing *Hoffman,* 409 N.W.2d at 376 (Wuest, CJ., concurring specially)). It is apparent that trial courts have failed to enforce this rule and have instead stretched the definition of good cause for delay too far. The majority opinion condones the acts of the State and the trial court and further erodes the already battered 180–day rule. As stated, it effectively guts the 180–day rule and, by liberal interpretation, turns it into a 365–day rule.