2003 SD 38

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Amy COTTRILL, Defendant and Appellant.**

**No. 22171.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 10, 2003.

Decided April 9, 2003.

Lawrence E. Long, Attorney General, Patricia Archer, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Michael A. Polk, Pennington County Public Defender, Rapid City, South Dakota, Attorneys for defendant and appellant.

PER CURIAM.

[¶ 1.] Amy Cottrill appeals her convictions for one count of procuring or promoting prostitution and one count of pimping.[1] She contends that she was denied her right to a trial within 180 days of her initial appearance as required by SDCL 23A–44–5.1. We affirm.

FACTS

[¶ 2.] On June 12, 2000, the State filed a three count complaint charging Cottrill with one count of procuring or promoting prostitution and two alternative counts of pimping. The following constitutes a chronology of other significant events pertinent to this appeal:

June 13, 2000—Cottrill's first appearance on the complaint.

---

1. Procuring or promoting prostitution was charged under SDCL 22–23–2(1):

Any person who:
(1) Encourages, induces, procures or otherwise purposely causes another to become or remain a prostitute;

\* \* \*

is guilty of a Class 5 felony.
Pimping was charged under SDCL 22–23–8(3):

Any person who:

\* \* \*

(3) Transports a person into or within this state to promote that person's engaging in prostitution, or procures or pays for transportation for that purpose;

\* \* \*

is guilty of a Class 6 felony.

July 13, 2000—Indictment filed.

August 7, 2000—Cottrill is arraigned on the indictment.

August 25, 2000—Service and filing of defense motion to suppress evidence.

August 29, 2000—Motion hearing before Judge Fitzgerald. Trial date set for October 30 and 31, 2000.

September 13, 2000—Order filed denying defense motion to suppress evidence.

October 30 and 31, 2000—Due to a scheduling conflict, trial dates are rescheduled by court administrator for December 14 and 15, 2000.

December 2000—Due to a trip taken by Judge Fitzgerald, December trial dates are rescheduled by court administrator for February 1 and 2, 2001. Prosecutor contacts defense counsel to discuss the 180 day rule. Defense counsel indicates his client will waive the rule.

December 10, 2000—180 calendar days after Cottrill's June 13 first appearance.

December 29, 2000—180 days after Cottrill's June 13 first appearance if nineteen days are excluded for the defense motion to suppress evidence.

January 29 & 31, 2001—Discovery/status hearing begins on January 29 and is continued on January 31. On January 31, defense counsel indicates Cottrill has kidney stones and was in the emergency room earlier that day. Counsel expresses concern that Cottrill might vomit during the trial set to commence the next day. Judge Fitzgerald denies a continuance and indicates that the trial will proceed. After the hearing, Cottrill goes to her doctor's office where she is given medication and a referral to a urologist. The doctor also provides Cottrill with a written excuse from court the following day. Defense counsel takes the excuse to Judge Fitzgerald who postpones the February 1 and 2 trial dates at Cottrill's request.

February 12, 2001—Status hearing. Cottrill is excused from appearing at the hearing because of illness. Judge Fitzgerald announces, "[t]his case is going to start on March 7th and 8th." For reasons not clear in the record, the trial date is actually set for April 11 and 12, 2001.

March 27, 2001—Judge Fitzgerald has eye surgery.

April 2001—Because of Judge Fitzgerald's eye surgery, the court administrator reschedules the April trial dates for May 10 and 11, 2001.

May 3, 2001—Status hearing. Extensive discussion of the 180 day rule. Judge Fitzgerald states he thought the 180 day rule was waived and mentions the case was set for trial and the defendant was medically unable to have a trial. Judge then states he had an eye operation on March 27 and is not up to having a jury trial on May 10 and 11. Again the judge indicates, "I really thought the 180 days—I think it's still been waived anyway." Judge Fitzgerald also mentions the possibility of getting another judge, but indicates that he would not really like doing that. The judge expresses his preference to continue the case to a date in June that would be certain. At that point, Judge Fitzgerald asks if the State has any objection. The prosecutor replies that he has no objection and that, "I believe the Court has set forth good cause for this delay at this point." The prosecutor then asks defense counsel if he has any objection and defense counsel replies, "I relayed this to my client." Judge Fitzgerald asks Cottrill directly if she has any objection and she replies, "No. No, I wasn't sure on the reason for the delay. I had—I was under the impression that it was because of reluctant witnesses in the beginning for the first

two delays." Cottrill continues stating, "[n]ow that I understand—I do understand." At that point, the judge mentions his mandate to get cases disposed of and again proposes a June trial date agreeable to everyone. Cottrill replies, "Yes. Yes." Judge Fitzgerald mentions dates of June 13 and 14 and Cottrill states, "I have problems with my witnesses." The judge then proposes June 27 and 28 and asks if that is agreeable. Cottrill answers, "[t]hat's fine." Her counsel also adds, "that's fine."

May 4, 2001—Defense counsel files a motion to modify Cottrill's bond conditions. The motion recites that, "speedy trial has been waived."

June and July, 2001—Judge Fitzgerald's health problems necessitate rescheduling trial dates.

July 3, 2001—Judge Fitzgerald dies. Case is later assigned to Judge Kern.

July 20, 2001—At Judge Kern's request, defense counsel sends Judge Kern a letter confirming Cottrill's waiver of her speedy trial rights. The letter recites in pertinent part:

> Upon request of the Court, who by and through her attorney ... respectfully confirms the oral waiver of our right to a speedy trial which had been originally scheduled for February 1 and February 2, 2001 and canceled upon Defendant's request showing that she had been hospitalized and unable to undergo trial at that time. The trial was canceled upon oral waiver of speedy trial.
>
> Rescheduling of the trial to April 11 and 12, 2001 was made upon the illness of the trial Judge, again to May 10 and 11 2001, and both parties agreed there had been an oral waiver of Defendant's speedy trial rights again at those times. The last trial was rescheduled until July 5 and 6,

2001 and not reset due to the illness and death of presiding Judge Fitzgerald."

August 20, 2001—Defense counsel files a motion to dismiss under the 180 day rule.

August 30, 2001—The State serves and files a response to the motion to dismiss and a motion to toll the 180 day rule.

August 31, 2001—Telephonic hearing before Judge James Anderson (at some point assigned to the case) on the motion to dismiss. Judge Anderson denies the motion finding an open ended waiver of the 180 day rule.

September 6, 2001—Cottrill's trial begins.

[¶ 3.] Cottrill was convicted and sentenced to concurrent sentences of eighteen months in the penitentiary on the two counts. She appealed and the State filed a motion to remand the matter to the trial court to conduct an evidentiary hearing to determine the cause of the delay in the case. This Court entered its order of remand on May 21, 2002, and the trial court conducted its remand hearing on July 17. On August 14, the trial court entered findings of fact and conclusions of law again determining Cottrill waived her rights under the 180 day rule. The matter is once again before this Court.

## ISSUE

[¶ 4.] **Did the trial court err in denying Cottrill's motion to dismiss for violation of the 180 day rule?**

[¶ 5.] "The 180 day rule requires a defendant to be brought to trial within 180 days of his first appearance before a judicial officer on an indictment, information or complaint." *State v. Sparks,* 1999 SD 115, n. 1, 600 N.W.2d 550, 551 (citing SDCL 23A–44–5.1). Cottrill argues that the trial court erred in denying her motion

to dismiss for violation of the rule in this case.

▆▆▆ [¶ 6.] A trial court's findings of fact on the issue of the 180 day rule are reviewed using the clearly erroneous rule. *State v. Pellegrino*, 1998 SD 39, ¶ 23, 577 N.W.2d 590, 599. However, this Court reviews "the determination of whether the 180 day period has expired as well as what constitutes good cause for delay under a de novo standard." *Sparks*, 1999 SD 115 at ¶ 5, 600 N.W.2d at 553.

▆▆ [¶ 7.] Here, the trial court entered the following findings of fact on the 180 day issue and, specifically, on Cottrill's waiver of her rights under the 180 day rule:

7.

Deputy State's Attorney, Kenneth E. Varns, who was handling the prosecution of Amy Cottrill, contacted Cottrill's attorney, Ramon Roubideaux, when Varns learned of the Administrator canceling the December 14 and 15, 2000 trial date. Varns told Roubideaux of the possibility of the matter going beyond the 180–day period, and Roubideaux assured Varns that Defendant would waive the 180–day rule. Had Roubideaux not waived the rule, the State would have requested the trial take place as scheduled. The 180 day rule was waived by counsel at that time.

8.

Defendant filed a motion to compel further discovery on January 29, 2001. A hearing was held on January 29, 2001. After that status hearing, Defendant contacted the Court indicating that she was ill. Due to the illness, the February 1 and 2, 2001, trial date was continued by the Defendant. In fact, Defendant was excused from appearing at a status hearing held February 12, 2001, as evidenced by a note from Dr. Looby dated February 11, 2001. A new trial date was set for April 11 and 12, 2001.

9.

At this time, Judge Fitzgerald began to have serious health problems which necessitated the continuance of the April 11 and 12, 2001, trial until May 10 and 11, 2001.

10.

On May 3, 2001, a status hearing was held before Judge Fitzgerald. Present were Defendant, Roubideaux, and a minister witness. At that time, prior to a record being made, an extensive discussion was held with Defendant and her attorney discussing the delays that had occurred in the case, and her right to a trial within 180 days. Judge Fitzgerald indicated to the parties that, because of his health problems, he did not feel he could conduct the jury trial that week. Defendant agreed to a continuance. Subsequent to this discussion, a record was made with a colloquy between Judge Fitzgerald and Defendant concerning the delays of the trial and her willingness to waive the 180–day rule. That transcript is a matter of record. This Court finds that the colloquy and the transcript together indicate the Defendant's willingness to accede to the trial taking place after the 180–day time period, and that this acted as a waiver of the Defendant's right to a trial within 180 days of the initial appearance. This is especially true given Mr. Roubideaux's assurance in December of 2000, that the Defendant would waive the 180–day rule.

11.

New trial dates were scheduled in June of 2001, and July of 2001; however, due

to the failing health of Judge Fitzgerald, and his untimely death on July 3, 2001, these trials were not held. In July 2001, the matter was transferred to Judge Kern. Judge Kern requested a letter from Roubideaux regarding the 180 day rule. In that letter, dated July 20, 2001, Roubideaux confirms the "oral" waiver of the 180 day rule.

### 12.

The Court finds that the State acted in due diligence in attempting to try this matter within 180 days. Further, according to the testimony of Varns, had Roubideaux not assured the State that the Defendant would waive the 180–day rule, the State would have acted to have the matter tried prior to the expiration of the 180 days. Defendant's indication that it would waive the 180–day rule operated as a waiver, upon which the State relied in conceding to a trial date beyond the 180 days. This, along with the Defendant's conduct in failing to object to continuances and indeed indicating in letters to the Court that she had waived the 180–day rule, all act as a waiver of the 180–day rule in this matter.

\* \* \*

### 16.

In weighing the credibility between the witnesses that testified in this proceeding, the Court specifically accepts the testimony of Deputy State's Attorney Kenneth E. Varns, and rejects Amy Cottrill's testimony that she was not

aware of the 180–day rule until sometime subsequent to its passing. In fact, Cottrill testified she did not become aware of the 180–day rule until July of 2001, which specifically contradicts the record in this case. The Court also recalls numerous instances of Ms. Cottrill's untruthful testimony at the trial in this matter.

[¶ 8.] These findings are supported by the record as summarized by the facts previously set forth. "This Court has long understood that an attorney may waive the protection of [the 180 day rule] on behalf of the client so long as it is done with the 'concurrence of the defendant.' " *Hays v. Weber*, 2002 SD 59, ¶ 21, 645 N.W.2d 591, 599 (*quoting State v. Bahm, Jr.*, 494 N.W.2d 177, 179 (S.D.1992)). Here, the record shows that defense counsel waived the protections of the 180 day rule on Cottrill's behalf when the December 2000 trial dates were originally rescheduled for February 1 and 2, 2001.[2] The prosecutor himself later testified that if Cottrill had not waived the 180 day rule at that time, he would have taken steps "to get the trial back on." Although the record does not reflect Cottrill's express concurrence with counsel's waiver of the 180 day rule in December 2000, it does reflect that further delays were at her own request because of her illnesses. Moreover, when Cottrill did finally appear before Judge Fitzgerald on May 3, 2001, she fully endorsed the reasons for the delay of her trial.

[¶ 9.] During the May 3, 2001 hearing, Judge Fitzgerald expressed several times

---

**2.** Any question over expiration of the 180 day rule in December 2000 is resolved by the filing of Cottrill's pretrial motion to suppress evidence on August 25, 2000. The nineteen days during which the motion was pending is excluded from the 180 day computation. *See Sparks,* 1999 SD 115 at ¶ 7, 600 N.W.2d at 553 (time from filing until final disposition of pretrial motions is to be excluded from computation of the 180 days). Thus, the initial 180 day period would not have expired until December 29, 2000. This would have been after counsel's waiver of Cottrill's rights under the 180 day rule in connection with the rescheduling of the December 14 and 15 trial dates.

that he believed that the 180 day rule had been waived. Neither counsel nor Cottrill objected or questioned his belief. Judge Fitzgerald then mentioned the possibility of getting a different judge to handle the case or of setting a June trial date. Neither counsel nor Cottrill requested a different judge nor did they object to a trial in June. Still concerned with Cottrill's speedy trial rights, Judge Fitzgerald then engaged in a personal colloquy with her to explain his mandate to dispose of cases in a timely manner and to discuss the reasons for the delay of her trial and the available options. Rather than asserting any speedy trial rights in that discussion, Cottrill expressed that she understood the reasons for the delay and that she had no objections to it. When Judge Fitzgerald went on to suggest a mid-June trial date, Cottrill even rejected it and consented to a later date in June because of some problems with her witnesses.

[¶ 10.] Cottrill's actions at the May 3 hearing endorsed her counsel's earlier waiver of her rights under the 180 day rule and confirmed her own waiver of rights under the rule. That is clearly the understanding on which all parties proceeded in the case as verified by the May 4 motion to modify Cottrill's bond conditions which recited that a speedy trial had been waived. Waiver was also verified in the letter regarding the 180 day rule that was submitted by Cottrill's counsel to Judge Kern after Judge Fitzgerald's death in July, 2001. In that letter, counsel referred three times to Cottrill's oral waiver of her speedy trial rights.

[¶ 11.] " '[W]here a defendant assents to a period of delay and later attempts to take advantage of it, courts should be loathe to find a violation of an accused's speedy trial rights.' " *Hays*,

3. Cottrill's appellate counsel did not serve as

2002 SD 59 at ¶ 23, 645 N.W.2d at 599 (*quoting State v. Beynon*, 484 N.W.2d 898, 903). This is precisely the situation here. Cottrill and her counsel clearly assented to the delay of her trial from December 2000 and throughout the spring and summer of 2001. Although a better record might have been made when Cottrill's counsel first waived her rights under the 180 rule in December 2000, it is clear that Cottrill later endorsed that waiver and that both the defense and prosecution acted and relied upon it. This Court has consistently rejected the necessity of any particular formalities for finding a valid waiver of rights under the 180 day rule. *See State v. Stepner*, 1999 SD 40, ¶ 15, 590 N.W.2d 905, 908. Thus, we agree with the trial court's findings that counsel's waiver in December 2000 and the colloquy between Judge Fitzgerald and Cottrill at the May 3, 2001 hearing acted as a waiver of her rights under the 180 day rule in this matter.

### ISSUE TWO

[¶ 12.] **Was Cottrill's trial counsel ineffective for failing to make a timely motion to dismiss for violation of the 180 day rule?**

[¶ 13.] As her second issue, Cottrill argues that her trial counsel was ineffective for failing to make a more timely motion to dismiss for violation of the 180 day rule.[3] However, this Court does not normally consider claims of ineffective assistance of counsel on direct appeal. As explained in *State v. Dillon*, 2001 SD 97, ¶ 28, 632 N.W.2d 37, 48:

Absent exceptional circumstances, we will not address an ineffective assistance claim on direct appeal. We depart from this principle only when trial counsel was "so ineffective and counsel's representation 'so casual' as to represent a

her trial counsel.

'manifest usurpation' of [the defendant's] constitutional rights." The preferred arena for an ineffective assistance claim is a habeas corpus proceeding. While there are many reasons for this rule, [appellant's] claims illustrate its main purpose: in habeas proceedings, attorneys charged with ineffectiveness can explain or defend their actions and strategies, and thus a more complete picture of what occurred is available for review. (citations omitted).

[¶ 14.] Based upon these principles, we decline to consider Cottrill's claim of ineffective assistance of counsel in this direct appeal where the conversations between Cottrill and her trial counsel concerning the 180 day rule and waiver of rights under the rule would be relevant in determining counsel's effectiveness.

[¶ 15.] Affirmed.

[¶ 16.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices, participating.